**UNITED STATES of America, Appellant,**

v.

**John F. BARTON, Jr., Defendant–Appellee.**

**No. 233, Docket 95–1107.**

United States Court of Appeals, Second Circuit.

Argued Oct. 11, 1995.

Decided Feb. 16, 1996.

Thomas J. Murphy, Assistant United States Attorney, New Haven, Connecticut (Christopher F. Droney, United States Attorney for the District of Connecticut, New Haven, Connecticut, of counsel), for Appellant.

Joseph Dimyan, Danbury, Connecticut (Pinney, Payne, Van Lenten, Burrell, Wolfe & Dillman, P.C., Danbury, Connecticut, Wendy A. Grispin, of counsel), for Defendant–Appellee.

Before: NEWMAN, Chief Judge, LUMBARD and CABRANES, Circuit Judges.

LUMBARD, Circuit Judge:

On November 4, 1994, John F. Barton, Jr. pleaded guilty to knowingly receiving in interstate commerce material involving the visual depiction of minors engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(2). At sentencing on January 23, 1995, over the government's objection, the court departed from the Sentencing Guidelines range of fifteen to twenty-one months' imprisonment in light of Barton's psychological condition, his limited involvement with child pornography, his nonpredatory nature, and his efforts toward rehabilitation. It sentenced him to a three-year term of probation subject to the following conditions: four months of electronically monitored home confinement; a $1,500 fine; psychiatric and/or psychological counseling as directed by the Probation Office; payment for twenty-four months of the cost of supervision at $180.90 per month; and two hundred hours of community service. The court also imposed the mandatory $50 special assessment.

The government appeals, asking that the sentence be vacated because the court improperly departed from the recommended sentencing range for the reasons given. We vacate and remand for resentencing.

## I.

The plea agreement stipulated the facts. In December 1993, William Colt of Greenville, North Carolina informed the Danbury, Connecticut Police Department that his son Karl was receiving, over his computer and through the mails, materials involving child pornography from an individual using the names John Barton and Bob Shaw. Karl Colt and Barton had been corresponding by telephone, mail, and electronic mail since 1988. Barton was forty-two years old that year; Colt was in his mid-twenties.

On or about January 7, 1994, Colt received a letter from Barton saying that he would send him a "video care package" for his new videocassette recorder. On March 28, Colt received in the mail an envelope containing three videocassettes, one of which was entitled "New Golden Boys 38." Although this videocassette featured sexual conduct between adults, it also contained one segment in which a minor about fourteen years old engaged in "masturbation and exhibition of his genital area in a lewd and lascivious manner." Colt acknowledged receipt of the videocassettes in an electronic mail message sent to Barton on April 21.

On April 28, Colt advised Barton by electronic mail that he was planning to copy the videotapes over the weekend and that he needed Barton's residential address in order to return them. In an electronic mail message that same day, Barton gave Colt his address. On May 27, an undercover postal inspector made a controlled delivery of the videocassettes to Barton's residence. Shortly thereafter, officers entered and searched Barton's home pursuant to a warrant and recovered the three videocassettes and the mailing envelope. They also seized several other items of child pornography, including some "visual depictions of prepubescent mi-

nors and/or minors under the age of 12 years engaged in sexually explicit conduct."

On November 4, 1994, Barton pleaded guilty to knowingly receiving pornographic materials involving minors and consented to the forfeiture of all materials involving child pornography in his possession. The Probation Office calculated Barton's base offense level as fifteen under the Sentencing Guidelines. *See* U.S.S.G. § 2G2.2. It added two points because the materials included visual depictions of minors under the age of twelve. *See id.* § 2G2.2(b)(1). It then reduced Barton's total offense level by two points for acceptance of responsibility, *see id.* § 3E1.1(a), and by one additional point because Barton timely notified the government of his intent to plead guilty, *see id.* § 3E1.1(b)(2), thus arriving at a total offense level of fourteen. Because Barton had no prior criminal record, the appropriate sentencing range under the Guidelines was fifteen to twenty-one months' imprisonment, to be followed by a term of supervised release of not more than three years.

In his presentence report, the Probation Officer recommended a downward departure from the guideline range on the sole ground that "the impact of prosecution ... resulted in a punitive effect to a degree and nature not adequately considered by the Sentencing Commission." In particular, he noted that

> Mr. Barton has undergone a tremendous amount of personal and professional embarrassment as the result of being prosecuted for his illegal behavior. He appears to have lost a tenured position as a librarian and it is unlikely that he will ever be able to regain that professional level. Further, his continued involvement in social and religious activities will undoubtedly be negatively impaired.

At sentencing on January 23, 1995, the court concluded that it would be improper to depart from the guideline range for the reason suggested by the Probation Officer. Nonetheless the court said that it was considering departing down from the recommended sentence range on three grounds. First, Barton's extraordinary psychological condition warranted a downward departure. Second, the court found that Barton's conduct was sufficiently "atypical" to justify a downward departure, noting particularly that Barton was not involved in the commercial distribution or production of child pornography and that there was no evidence that Barton was a pedophile or that he had sexually abused children. Third, the court considered reducing Barton's total offense level in light of his efforts toward rehabilitation.

The government objected to each of the court's proposed grounds for downward departure. It asserted that Barton's psychological condition was not "extraordinary" as compared to other individuals convicted of receiving child pornography. Likewise, the government argued that Barton's conduct was not atypical: his limited involvement and nonpredatory profile did not entitle him to a sentence reduction because the statutes and the Guidelines had taken such factors into account by establishing different offenses and recommending stiffer sentences for producers and distributors of child pornography and by authorizing upward adjustments for actual instances of sexual abuse. Furthermore, the government disagreed with the court's suggestion that Barton had demonstrated "extraordinary" efforts at rehabilitation by beginning psychiatric therapy after the search of his home.

The court offered to postpone sentencing in order to permit the parties to introduce additional evidence regarding its proposed grounds for departure. The government expressed a desire to have Barton examined by another psychiatrist or to introduce expert testimony on the mental health problems of individuals with Barton's condition. However, as the court suggested that it would not find such evidence "particularly probative," the government chose not to seek a continuance and merely reserved its objections. The court granted Barton a six-level downward adjustment, thereby making him eligible for probation. *See* U.S.S.G. § 5B1.1. It sentenced Barton to a three-year term of probation subject to the special conditions mentioned above.

Because the record thus far developed does not support the Court's grounds for a departure, we vacate Barton's sentence and remand for resentencing.

## II.

### A. Mental and Emotional Condition

 The court departed down from the guideline range based in part upon its determination that Barton suffered from a "significant aberrational kind of mental and emotional circumstance." *See United States v. Lara,* 905 F.2d 599, 603 (2d Cir.1990) (permitting downward departure where a defendant's mental and emotional condition presents "an extraordinary situation"); U.S.S.G. § 5H1.3, p.s. ("Mental and emotional conditions are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range, except as provided in [§ 5K2.0 et seq.]"); U.S.S.G. § 5K2.0, p.s. ("[D]eparture from the applicable guideline range is warranted only if [a factor considered by the Guidelines] is present to a degree substantially in excess of that which ordinarily is involved in the offense."). Its findings rested upon a two-page letter by Barton's treating psychiatrist, Matthew J. Klein, M.D., submitted to the court in connection with Barton's release on bail. The letter described Barton's condition as follows:

> My clinical impression of Mr. Barton is that he has had an untreated depression for many years in addition to the significant emotional problems which brought him into legal difficulties. His characterological problems are indicative of significant identity confusion and difficulty in perceiving himself as an adult in an adult world. Anxiety and depression intensify his fantasy life which involoves [sic] child sexual imagery. He shows no evidence of psychosis. His sense of morality is significantly intact. He appreciates both the societal and moral constraints of his behavior. . . . In many areas of his life, Mr. Barton has demonstrated responsibility, civic mindedness, and achievement.

Although the court acknowledged that Barton was not "an extraordinarily mentally health aberrant individual," it surmised that Barton's mental and emotional condition constituted "an integral part of the conduct" in question which "detract[ed] from the intent to violate the law," justifying a downward departure under § 5K2.0.

The evidence does not support a downward departure on the ground that Barton suffered from an extraordinary mental or emotional condition. Despite the gravity of Barton's mental health disorders, Dr. Klein noted that Barton "shows no evidence of psychosis," that "[h]is sense of morality is significantly intact," and that "[h]e appreciates both the societal and moral constraints of his behavior." Moreover, the court discouraged the government from examining Dr. Klein and from introducing additional evidence regarding the psychological condition of other individuals convicted of Barton's crime. *Cf. United States v. Johnson,* 979 F.2d 396, 401 (6th Cir.1992).

### B. Atypicality

 The court also based its decision to depart from the Guidelines upon a finding that Barton's conduct was "atypical" and fell outside the "heartland," or the "set of typical cases embodying the conduct that each guideline describes." U.S.S.G. ch. 1, pt. A, subpt. 4(b), p.s. First, it opined that the purpose of 18 U.S.C. § 2252(a)(2) was to eradicate the production and distribution of materials involving the sexual exploitation of minors; while Barton's receipt of the videotape fell within the literal scope of the statute, it was "somewhat removed from the core case which is contemplated by the statutes." The court also viewed Barton's circumstances as "atypical" because there was no evidence that he was a pedophile or had ever sexually abused children.

The Child Protection Act of 1984, 18 U.S.C. § 2251 et seq., defines a number of crimes involving the sexual exploitation and abuse of children. It includes provisions proscribing the sale and purchase of children for use in the production of child pornography; the production of child pornography; the publication of offers to receive or to distribute child pornography; the transportation, shipment, receipt and distribution of child pornography in interstate commerce; the possession of child pornography with intent to distribute; and the simple possession of child pornography. The Commission's sentencing scheme for offenses involving the sexual exploitation of minors mirrors Con-

gress's statutory framework and recommends separate offense levels for each crime. *See* U.S.S.G. ch. 2, pt. G, subpt. 2.

In light of the specificity of the statute and the Guidelines, the First Circuit concluded that the Sentencing Commission had contemplated that § 2G2.2 would apply to "a mere passive offender who has not engaged in distribution of pornography on a significant scale or for pecuniary gain." *United States v. Deane,* 914 F.2d 11, 13–14 (1st Cir.1990) (denying downward departure for an individual engaged in the noncommercial exchange of child-pornographic materials through the mails). *But see United States v. Bierley,* 922 F.2d 1061, 1068 (3d Cir.1990) (holding that a recipient of child pornography might be entitled to a downward departure on an analogy to § 3B1.2 (mitigating role in the offense)). The Commission clearly foresaw that § 2G2.2 would extend to an individual in Barton's circumstances.

We disagree with the court's conclusion that Barton deserved a downward departure because he had never sexually abused children. Other courts have been "unwilling to make a broad generalization that those convicted of receiving child pornography also ordinarily abuse children." *United States v. Studley,* 907 F.2d 254, 258 (1st Cir.1990) (denying a downward departure to defendant convicted of ordering child pornography by mail despite the court's finding that he was not a child molester). Furthermore, section 2G2.2 permits the sentencing judge to add a five-level enhancement to the sentence of an individual convicted of receiving or distributing child pornography "[i]f the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor." U.S.S.G. § 2G2.2(b)(4). Inasmuch as the offense to which Barton pleaded guilty (receipt of child pornography) did not contemplate sexual abuse of children, we find that he is not entitled to a departure merely because he did not commit an additional crime.

### C. Proposed Rehabilitation

The court found that Barton had made efforts at rehabilitation "of such a degree and nature as to warrant consideration as a ground for departure." Its findings of fact regarding Barton's potential rehabilitation rested on Dr. Klein's letter, which stated:

> Though never completely without risk, it is my clinical impression that continued intensive therapy combined with the limiting effects of having been caught and sanctioned by society will significantly decrease [Barton's] risk of recidivism.

> Among those who enter psychiatric treatment, Mr. Barton possesses a high degree of motivation. He reflects distress about his psychological state and he demonstrates motivation by attempting to make the changes necessary to conform his behavior within legal bounds as well as pursuing a higher level of health. I believe he will be compliant to treatment and to all other rehabilitative recommendations.

The court also cited the difficulty of Barton's decision publicly to acknowledge his disorder as well as his commitment to overcoming his condition.

■ A court may depart from the applicable guideline range in view of the defendant's efforts toward rehabilitation. *See United States v. Maier,* 975 F.2d 944, 948–49 (2d Cir.1992) (approving reduction of a sentence to probation in light of defendant's extraordinary efforts at overcoming her addiction to heroin); *see* 18 U.S.C. § 3553(b). An individual convicted of receiving child pornography may be entitled to a downward departure in light of his or her rehabilitative efforts, provided those efforts are extraordinary. *See Studley,* 907 F.2d at 259; *United States v. Williams,* 65 F.3d 301, 305 (2d Cir.1995) ("A tentative step towards rehabilitation is not usually enough to warrant a downward departure."). We approved a downward departure in *Maier* only after the district court had

> conscientiously examined all of the pertinent circumstances, including the nature of the defendant's addiction, the characteristics of the program she has entered, the progress she is making, the objective indications of her determination to rehabilitate herself, and her therapist's assessment of

her progress toward rehabilitation and the hazards of interrupting that progress.

975 F.2d at 948–49.

■ The evidence does not sustain the court's finding that Barton has made extraordinary efforts at rehabilitation. The fact that Barton has sought rehabilitation of his own volition does not of itself justify a reduction in sentence. *See United States v. Monk,* 15 F.3d 25, 28 (2d Cir.1994). Although the support from Barton's colleagues and community may improve his chance at rehabilitation, *see United States v. Neiman,* 828 F.Supp. 254, 255 (S.D.N.Y.1993), that does not constitute an extraordinary circumstance meriting departure. Dr. Klein cited no "objective indications of [Barton's] progress towards overcoming" his condition. *United States v. Williams,* 37 F.3d 82, 86 (2d Cir. 1994). A downward departure was inappropriate on this record.

### III.

On remand, the court should extend to the government and Barton full opportunity to introduce relevant evidence and should enter findings of fact substantiating any conclusion it may reach regarding Barton's entitlement to a downward departure. If the court does find support in the record for its conclusion that Barton's rehabilitative efforts are extraordinary, reducing Barton's sentence from a minimum of fifteen months' imprisonment to probation would not be unreasonable. *See, e.g., Maier,* 975 F.2d at 949 (finding reduction in sentence from minimum of fifty-one months' imprisonment to probation reasonable); *Neiman,* 828 F.Supp. at 256 (finding reduction in sentence from minimum of ten months' imprisonment to probation reasonable).

We vacate the sentence and remand for resentencing.