**UNITED STATES of America,**

v.

**Ithyle T. GRIFFITHS.**

**Criminal No. 2:95–CR–55–01.**

United States District Court,
D. Vermont.

Jan. 11, 1997.

John Lawrence Pacht, Hoff, Curtis, Pacht, Cassidy & Frame, P.C., Burlington, VT, for Ithyle T. Griffiths.

Peter W. Hull, Asst. U.S. Atty., District of Vermont, Burlington, VT, for U.S.

*OPINION AND ORDER*

SESSIONS, District Judge.

## I. Introduction

This matter is before the Court as a result of Defendant's Motion for Downward Departure pursuant to the United States Sentencing Guidelines, § 5K2.0. Defendant pled guilty to one count of distributing a quantity of Lysergic Acid Diethylamide (LSD) in violation of 21 U.S.C. § 841(a)(1). Under § 2D1.1 of the Sentencing Guidelines, the Base Offense Level is 26. Since Defendant meets the criteria set forth in subdivisions (1)–(5) of § 5C1.2, and his offense level is 26 or greater, the offense level is reduced two levels, to 24, pursuant to § 2D1.1(b)(4). Under § 3E1.1, the offense level is reduced an additional three levels, to 21, because of Defendant's acceptance of responsibility, thereby placing the applicable guideline range in Zone D of the Sentencing Table. Defendant now seeks a downward departure from level 21 to level 8. For the reasons discussed below, Defendant's Motion is hereby GRANTED.

## II. Facts of the Case

Ithyle Griffiths was twenty-two years old when he made the grave mistake of distributing LSD. His subsequent arrest, however, ended a period of his life predominated by aimlessness, and ushered in a new and more focused life.

Griffiths was raised and educated in northern California. Soon after graduating from high school, Griffiths drifted into a culture revolving around the Grateful Dead. He became a "Deadhead" who, like so many thousands of other devoted fans, followed the Grateful Dead from concert to concert, from one end of the country to the other. For five years, Griffiths and a band of friends led a nomadic existence, sustaining themselves on income earned by selling burritos, blown glass, and tee shirts in the parking lots outside concert stadiums. He spent these years steeped not only in the music of the Grateful Dead, but in the subculture of its followers, a subculture infamous for the prevalence and permissiveness of drug use. It was in this environment that Griffiths began to use mar-

ijuana, in large quantities and on a regular basis, and eventually, to sell LSD.

In July of 1994, Griffiths followed the Grateful Dead to a concert in Highgate, Vermont. At the Highgate concert, a DEA agent approached Griffiths seeking to purchase drugs from him. Griffiths obtained one thousand hits of LSD from another individual at the concert, and sold them to the DEA agent. In November of 1994 and February of 1995, the DEA agent contacted Griffiths by telephone and arranged for the delivery of drugs by mail. On each occasion, the DEA agent sent money orders to Griffiths, and approximately one month later a quantity of LSD arrived in Williston, Vermont.

A Grateful Dead concert the following year, in June, 1995, brought Griffiths back to Highgate, but this would be the last stop on his Grateful Dead tour. On June 16, 1995, Griffiths was arrested at the Highgate concert for the three LSD sales just described. Following arraignment, a detention hearing was held and on June 20, 1995, Griffiths was released, on bond and on several conditions, pending trial. Griffiths subsequently pled guilty to one count of distributing LSD, and remained on conditional release pending sentencing.

Since his arrest, Griffiths has turned his life around dramatically. Upon release in June, 1995, he began living with his sister and brother-in-law in Santa Cruz, California. Shortly after moving to Santa Cruz, Griffiths became engaged in intensive drug counseling, including attendance at Narcotics Anonymous meetings on a regular basis. In addition, he obtained a job with a vitamin manufacturer filling vitamin bottles. Despite the monotonous nature of the work, Griffiths stayed with the job. He also researched educational opportunities, and in January of 1996, began a course of study in computer graphics training at the Computer Arts Institute in San Francisco, California. At this time, Griffiths began living with his father in Woodacre, California, so that he would be able to attend classes in San Francisco. Griffiths needs only three additional courses to fulfill his requirements to obtain a certificate from the Computer Arts Institute.

Around the same time that he began taking classes, Griffiths obtained employment at a natural foods store called Wild Oats Market. Griffiths started as a bag boy working 30 hours a week, and was promoted three times within a six-month period. He now holds a full-time supervisory position as marketing director, and uses his graphics design skills to create in-store displays. He has won numerous commendations for his dedication and for the high quality of his work.

In addition to his educational and work achievements, Griffiths has taken an active involvement in his community. He has started a Saturday arts program for children, and is currently organizing a farm tours program for young people.

Griffiths has garnered the respect and admiration of his peers and co-workers. The Director of the Computer Arts Institute describes him as "one of [their] star pupils and a staff favorite," and as "a skilled and motivated student" whose progress and quality of work has been "astounding." Presentence Investigation Report at ¶ 41; Sentencing Memorandum, Ex. F. Griffiths' manager at Wild Oats describes him as "one of [our] most valued employees [who] has shown great leadership in the store as well as outside in the community." Sentencing Memorandum, Ex. A.

Frequent urinalysis has shown Griffiths to be drug-free for nineteen months. Presentence Investigation Report at ¶ 39. Moreover, Griffiths has himself requested more frequent urinalysis than required by Pre-Trial Services. He has been steadfast in attending drug counseling and in overcoming his marijuana habit. He has committed himself to putting his drug days behind him.

Griffiths' rehabilitative efforts have been aided considerably by the tremendous support of his family. His parents and siblings have provided guidance and encouragement ever since he returned to California. He has lived with family members continuously since his release, and has been subject to their vigilance and care. Significantly, family members unanimously agree that Griffiths has never been as enthusiastic about life as he has been in the last year.

At the age of twenty-four, Ithyle Griffiths has begun to develop and demonstrate his sense of adult responsibility. He has found drug-free fulfillment in school, at work, in his community, and at home. After years of wandering astray, Griffiths is drifting no more.

### III. Discussion

The Sentencing Guidelines were intended to define a "heartland" of typical cases to which guideline-specified sentences are to apply. United States Sentencing Commission, *Guidelines Manual*, Ch. 1, Pt. A, Comment 4(b). However, the Sentencing Reform Act of 1984 provides that a court may depart from the Sentencing Guidelines if the court "finds that an aggravating or mitigating circumstance exists that was not adequately taken into consideration by the Sentencing Commission in formulating the guidelines and that should result in a sentence different from that described." 18 U.S.C. § 3553(b). Such allowance for fair and flexible application of the Guidelines comports with the overall legislative purpose of the Sentencing Reform Act. As the Second Circuit has stated:

> The legislative history reflects that it was not Congress' aim to straitjacket a sentencing court, compelling it to impose sentences like a robot inside a Guidelines' glass bubble, and preventing it from exercising discretion, flexibility or independent judgment. [As stated by the sponsoring committee,] "The Committee does not intend that the guidelines be imposed in a mechanistic fashion. It believes that the sentencing judge has an obligation to consider all the relevant factors in a case and to impose a sentence outside the guidelines in an appropriate case. The purpose of the sentencing guidelines is to provide a structure for evaluating the fairness and appropriateness of the sentence for an individual offender, not to eliminate the thoughtful imposition of individualized sentences."

*United States v. Lara*, 905 F.2d 599, 604 (2d Cir.1990) (quoting S.Rep. No. 225, 98th Cong., 2d Sess. 52, reprinted in 1984 U.S.C.C.A.N. 3182, 3235), *quoted with approval in United States v. Williams*, 65 F.3d 301 (2d Cir.1995).

The Supreme Court has recently provided guidance on departures from the Guidelines in *Koon v. United States*, —— U.S. ——, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). In *Koon*, the Court distinguished between three types of departures: (1) prohibited departures, based on forbidden factors; (2) discouraged bases for departure, based on factors "not ordinarily relevant to the determination of whether a sentence should be outside the applicable guideline range"; and (3) bases for departure encouraged by the Sentencing Guidelines. —— U.S. at ——, 116 S.Ct. at 2045. This Court holds that a discouraged basis for departure exists in the present case and that the case therefore falls outside of the heartland. The Court holds that downward departure is appropriate on the basis of Defendant Griffiths' extraordinary rehabilitative efforts, and in light of the totality of the circumstances.

### A. Extraordinary Rehabilitative Efforts

The Second Circuit has recognized that a downward departure is appropriate in cases in which a drug-addicted defendant has made extraordinary rehabilitative efforts. *United States v. Maier*, 975 F.2d 944 (2d Cir.1992). The rationale of *Maier* extends beyond drug rehabilitation, however, and may apply to instances of non-narcotics rehabilitation as well, as has been confirmed by the Second Circuit Court of Appeals and district courts within the circuit. *See, e.g., United States v. Barton*, 76 F.3d 499 (2d Cir.1996) (holding downward departure available for rehabilitative efforts of defendant convicted of knowing receipt of child pornography); *United States v. Neiman*, 828 F.Supp. 254 (S.D.N.Y.1993) (granting downward departure for extraordinary rehabilitative efforts of defendant convicted of mail fraud and use of false social security number).

In *Maier*, the Second Circuit rejected the argument that rehabilitation is not an appropriate basis for sentencing. It held that rehabilitation, while not an appropriate basis for *imprisonment*, may be taken into account for sentencing purposes. 975 F.2d at 946. Moreover, the court stated that "Congress

must have anticipated that sentencing judges would use their authority, in appropriate cases, to place a defendant on probation in order to enable him to obtain 'needed ... medical care, or other correctional treatment in the most effective manner.'" *Id.* at 947 (quoting 18 U.S.C. § 3553(a)(2)(D)).[1] The court also stated conclusively that rehabilitation-based defenses were not "adequately taken into consideration by the Sentencing Commission in formulating the guidelines." *Id.*

The defendant in *Maier* received a downward departure on the basis of her extraordinary efforts to overcome her heroin addiction. The court stated, "though drug dependence is not a reason for a departure, the related awareness of one's circumstances and the demonstrated willingness to achieve rehabilitation, thereby benefiting the individual and society, is such a reason." 975 F.2d at 948. Furthermore, the court noted that a downward departure would not be upheld merely because a defendant had entered a drug treatment program. Rather, the departure in *Maier* was upheld because the District Judge had "conscientiously examined all of the pertinent circumstances, including the nature of the defendant's addiction, the characteristics of the program she has entered, the progress she is making, the objective indications of her determination to rehabilitate herself, and her therapist's assessment of her progress toward rehabilitation and the hazards of interrupting that progress." *Id.*

The Second Circuit expressed its willingness to uphold downward departures on the basis of non-narcotic rehabilitative efforts in *United States v. Barton,* 76 F.3d 499 (2d Cir.1996). *Barton* involved a defendant who had knowingly received child pornography. The District Judge granted a downward departure on the ground that the defendant had voluntarily sought therapy, and that a letter from his psychiatrist, as well as the defendant's decision to publicly acknowledge his disorder, demonstrated his commitment to rehabilitation. Although the Second Circuit did not uphold the departure, its disapproval was based on the factual insufficiency of the evidence relied upon by the District Court and not upon a legal conclusion that the rehabilitative effort ground was unavailable in the case. To the contrary, the court stated, as a matter of law, that "[a]n individual convicted of receiving child pornography may be entitled to a downward departure in light of his or her rehabilitative efforts, provided those efforts are extraordinary." 76 F.3d at 503.

Finally, in *United States v. Neiman,* 828 F.Supp. 254 (S.D.N.Y.1993), the court departed downward in a case in which the defendant had been convicted of mail fraud and using a false social security number. The court noted that downward departure is appropriate when the deterrence, prevention, and rehabilitation objectives of the Sentencing Reform Act can be met without incarceration, and where incarceration would in fact be counterproductive to rehabilitation. 828 F.Supp. at 255.

Having "conscientiously examined all of the pertinent circumstances" in the present case, *Maier,* 975 F.2d at 948, the Court concludes that Griffiths' rehabilitative efforts since his arrest have been extraordinary. Not only has he overcome his drug use, he has left his former lifestyle entirely behind him. Griffiths' perseverance in drug counseling, accomplishments at the Computer Arts Institute, and success in his job at Wild Oats demonstrate a level of dedication and engagement in his life that had clearly been lacking for several years, including the time of his criminal offenses. Moreover, through his involvement in community programs with children, Griffiths has exhibited a sense of social responsibility that he did not previously possess. From the letters of support submitted to the Court by the Computer Arts Institute and Wild Oats, it is clear that Griffiths has made significant progress, and that he is committed to continuing along his newfound path.

It is the Court's opinion that the progress Griffiths has achieved in the past nineteen

---

1. 18 U.S.C. § 3553(a)(2)(D) provides that in determining the sentence to be imposed, the court shall consider "the need for the sentence imposed ... to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

months would be not only slowed, but utterly frustrated if Griffiths were incarcerated. The structure and guidance that his family, educational program, employment, and drug counseling provide are undisputably of great rehabilitative value, and such support could not be expected in prison. Moreover, as in the *Neiman* case, the important deterrence and prevention objectives of the Sentencing Reform Act can be adequately served by home confinement and close supervision of Griffiths.

### B. Totality of the Circumstances

█ In addition to Griffiths' rehabilitative efforts, the totality of the circumstances in this case provides a basis for downward departure. A 1994 amendment to the Sentencing Guidelines provides:

> The Commission does not foreclose the possibility of an extraordinary case that, because of a combination of [offender] characteristics or [other] circumstances, differs significantly from the "heartland" cases covered by the guidelines in a way that is important to the statutory purposes of sentencing, even though none of the characteristics or circumstances individually distinguishes the case.

U.S.S.G. § 5K2.0, Commentary (as amended Nov. 1, 1994). This provision appears to statutorily overrule *United States v. Minicone*, 26 F.3d 297 (2d Cir.), *cert. denied*, 513 U.S. 344, 115 S.Ct. 344, 130 L.Ed.2d 300 (1994) (holding that the sentencing court may depart downward on basis of aggregated factors which, considered individually, would not warrant departure). *See United States v. DeRiggi*, 893 F.Supp. 171, 182 (E.D.N.Y. 1995) (Weinstein, J.).

There are several mitigating factors in this case which, when considered in their totality, warrant downward departure. Griffiths is a first-time offender who functioned only as a middleman in the drug transactions for which he was convicted. In addition, he is a young, attractive, extraordinarily sensitive man who would quite possibly be victimized in prison. *See United States v. Gonzalez*, 945 F.2d 525, 526–27 (2d Cir.1991); *United States v. Lara*, 905 F.2d 599, 603–04 (2d Cir.1990). Through his post-arrest conduct, he has demonstrated exceptional acceptance of responsibility, *see*

*United States v. Rogers*, 972 F.2d 489 (2d Cir.1992), and as discussed in detail above, he has made extraordinary efforts at rehabilitation. While each of these factors may or may not by itself rise to the level of a basis for departure, when taken together, they present extraordinary circumstances and justify a downward departure.

### IV. Reasonableness of Downward Departure

When a sentencing court has grounds for downward departure, the departure may not be unreasonable. 18 U.S.C. § 3742(e)(3); *Maier*, 975 F.2d at 949. In sentencing the defendant in *Maier*, the District Court reduced the defendant's offense level from 24 to 8. *United States v. Maier*, 777 F.Supp. 293 (S.D.N.Y.1991), *aff'd*, 975 F.2d 944 (2d Cir.1992). The corresponding sentence was reduced from a minimum of 51 months' imprisonment followed by three years supervised release to four years' probation. In reviewing this sentence, the Second Circuit held that the departure was not unreasonable. 975 F.2d at 949. By analogy, a reduction in offense level from 21 to 8 in this case is not unreasonable either.

### V. The Sentence

On the basis of Griffiths' extraordinary rehabilitative efforts as well as the totality of the circumstances in the case, Defendant's offense level is reduced from 21 to 8. Defendant is sentenced to a probationary term of three years, the first six months of which he is to serve in home confinement. In addition, Defendant shall perform 500 hours of community service, such service to involve the teaching of art to children in Griffiths' local community. Griffiths must participate in drug counseling and rehabilitation, provide random urinalysis tests, and comply with all other standard conditions of probation.

### VI. Conclusion

Based on the foregoing analysis, Defendant's Motion for Downward Departure (Paper No. 43) is hereby GRANTED.