108 F.3d 330
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
UNITED STATES of America, Appellant,
v.
Salim NAJJAR; Sami Najjar, Defendants-Appellees.
 No. 96-1478.
 United States Court of Appeals, Second Circuit.
 March 3, 1997.
 
 1
 APPEARING FOR APPELLANT: Bradley E. Tyler, Asst. U.S. Atty., Rochester, N.Y.
 
 
 2
 APPEARING FOR APPELLEES: Scott Green, Rochester, N.Y.; Robert F. Leone, Rochester, N.Y.
 
 
 3
 Present: NEWMAN, Chief Judge, KEARSE, FRIEDMAN,* Circuit Judges.
 
 
 4
 The United States appeals from the June 25, 1996, judgments of the District Court for the sentencing Salim and Sami Najjar after their convictions for money laundering, in violation of 18 U.S.C. § 1956(a)(3), conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), and food stamp trafficking, in violation of 7 U.S.C. § 2024(b). After a jury returned guilty verdicts against both defendants on one count of each violation, Chief Judge Larimer departed downward seven levels from the money laundering guideline, see United States Sentencing Guidelines Manual (U.S.S.G.) § 2S1.1, and sentenced each defendant to concurrent sentences of 24 months on each count, plus three years of supervised release. The Government contends that the case should be remanded for resentencing because the District Court's departure reflected the erroneous view that the money laundering guideline applies only to offenses involving drug proceeds.
 
 
 5
 Salim and Sami Najjar were arrested after they assisted in a scheme to purchase of $1,000,000 of food stamp coupons in exchange for approximately $720,000 in cash, checks, money orders, and other property. Because the Najjars were licensed food stamp vendors, they would have been able to deposit the illegally-obtained coupons into their own bank accounts. Unfortunately for the Najjars and their co-conspirators, the person selling the coupons was an undercover FBI agent.
 
 
 6
 Prior to sentencing and after reviewing the presentence report, the Najjars requested a downward departure for extraordinary family circumstances, duress, and victim conduct. Salim is the owner of a convenience store. He has eight children, five of whom he and his wife support. He claimed that his business and the sole financial support for his family would be lost if he were incarcerated for a long period of time. Sami's family circumstances are similar--he and his wife run a convenience store and support their five children.
 
 
 7
 At sentencing Chief Judge Larimer stated that he was departing downward sua sponte because in his opinion the circumstances of the case were outside the heartland of money laundering contemplated by the Sentencing Commission. He reasoned (i) that the defendants' original scheme was simply to buy food stamps, not to launder money, (ii) that the defendants had only a minor role in the offense, (iii) that the Government had manipulated the indictment to charge money laundering in addition to food stamp fraud, and (iv) that the money laundering guideline's high offense level reflects the fact that the money laundering guideline was originally intended to combat the illegal drug trade. Finally, he added that although he would be inclined to depart on the foregoing grounds alone, he also found that the defendants' extraordinary family circumstances supported the departure.
 
 
 8
 A sentencing judge's departure decision is given broad deference on review by an appellate court. See Koon v. United States, 116 S.Ct. 2035, 2046 (1996). Thus, after Koon, we review departures, including the propriety of the basis for the departure, solely for an abuse of discretion. United States v. Rioux, 97 F.3d 648, 663 (2d Cir.1996) (citing Koon, 116 S.Ct. at 2048).
 
 
 9
 Because the money laundering guideline includes a provision for a three-level increase if the defendant had knowledge that the laundered funds were the proceeds of drug-related activity, U.S.S.G. § 2S1.1(b)(1), we agree with the Government that the mere absence of drug-related activity would not take a food stamp violation outside the money laundering heartland. E.g., United States v. Barton, 76 F.3d 499, 503 (2d Cir.1996) (departure should not be based on the absence of a factor for which the relevant guideline specifically provides an increase). However, in this case, Chief Judge Larimer articulated numerous reasons to support his conclusion that the particular circumstances of this case fell outside the heartland of money laundering, even money laundering of non-drug proceeds. In "extraordinary cases" a sentencing judge may depart downward based on a combination of factors that might not warrant a departure when considered individually. See Rioux, 97 F.3d at 663 (citing U.S.S.G. § 5K2.0 cmt. (1995)). We cannot say that the combination of factors relied on by Chief Judge Larimer to justify his departure amounted to an abuse of discretion. The sentences are therefore affirmed.
 
 
 
 *
 Of the United States Court of Appeals for the Federal Circuit, sitting by designation