**UNITED STATES of America**

v.

**Amrhu DYCE, Defendant.**

**Crim. Action No. 93–00219.**

United States District Court, District of Columbia.

Aug. 18, 1997.

18

A. J. Kramer, Leigh A. Kenny, Federal Public Defender for D.C., Washington, DC, for Amrhu A. Dyce.

Richard Lee Chamovitz, U.S. Attorney's Office, Washington, DC, Edward George Burley, U.S. Attorney's Office, Civil Div., Washington, DC, for U.S.

**SENTENCING OPINION**

SPORKIN, District Judge.

This matter is before the Court on the resentencing of Defendant Amrhu A. Dyce. On March 2, 1994, Defendant pled guilty to Conspiracy to Distribute and Possess With Intent to Distribute Cocaine Base, a violation of 18 U.S.C. § 371 (1994). After three sentencing hearings, on October 19, 1994 the Court departed downward from the U.S. Sentencing Guidelines (the "Guidelines") on grounds of extraordinary family circumstances, and sentenced Defendant to a mixed probationary and custodial term of five (5) years.[1]

The Court's intention was to sentence the Defendant to a three year period of custodial confinement where she could be housed with her infant child. Finding that the Bureau of Prisons had no suitable facilities to care for women prisoners with an infant child, the Court, after an extensive investigation made by the Probation Office, was able to locate a non-governmental custodial facility that would allow a mother to be with her children while she underwent treatment. As part of its sentence, the Court ordered that Defendant be placed in the "Young Mothers Program" in New York, N.Y. for the first 24 month period of her probation, where she would be able to reside with her infant son. After the infant had been weaned from his mother, Defendant was then to spend the next 12 months in a community correction facility or halfway house. *See* Judgment filed on October 20, 1994.

The government appealed and the Court of Appeals vacated Defendant's sentence and remanded the case for resentencing. The Court has now considered Defendant's Sentencing Memorandum related to the resentencing and the opposition thereto, and heard argument on July 22, 1997. After careful review and consideration of the substantial changes in the facts and circumstances of this case, the Court finds that reimposition of a mixed probationary and custodial term of five years is warranted.

1. Under the Guidelines, Defendant faced a five (5) year prison sentence. Although the Guidelines range based on Defendant's total offense level of 32 and criminal history category of I was 121 to 151 months, the Guidelines sentence became 60 months (5 years) because the statutory maximum is five years. U.S.S.G. § 5G1.1(a) (1994).

## BACKGROUND

### I. Procedural History

On May 6, 1993, Defendant was in route from New York City to Raleigh, North Carolina and was stopped by Amtrak Police in Union Station, Washington, D.C. She consented to a search of her tote bag, in which officers found three bags filled with a white, rock-like substance. A field test confirmed that the substance was cocaine. Drug Enforcement Administration laboratory analysis revealed that the police had seized 191.8 grams of 76% pure cocaine base.

On March 2, 1994, Defendant pled guilty to the Information charging Conspiracy to Distribute and Possess With Intent to Distribute Cocaine Base, 18 U.S.C. § 371 (1994). She faced a Guidelines sentence of five years, as described above. After three sentencing hearings held between June and October, 1994, this Court found that a downward departure from the Guidelines sentence was warranted on grounds of extraordinary family circumstances.[2] The Court entered judgment on October 19, 1994, and sentenced Defendant to 60 months of probation with certain restrictions on her liberty.

The government appealed the Court's sentence. On March 8, 1996, the Court of Appeals vacated the sentence and remanded the case for resentencing. *United States v. Dyce,* 91 F.3d 1462 (D.C.Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 533, 136 L.Ed.2d 418 (1996). The Court held a resentencing hearing on July 22, 1997.

### II. Events Since the Original Sentencing

Since June 8, 1993, when Defendant was released from the custodial aspect of her sentence, there have been substantial changes in the circumstances surrounding this case.

First, Defendant has coped successfully with the custodial confinement imposed by the Court at her initial sentencing. She was in a drug free residential treatment program, La Casita, for a period of time and made significant steps to improve herself. Unfortunately, she had to leave this program after suffering a severe stroke. Because La Casita had no facilities to treat Defendant's medical problems, she was discharged from the program and, with the Court's approval, she was transferred to Mrs. A's Place, a medically supervised intensive out-patient program. Defendant completed the day care program of Mrs. A's Place in October 1996, and since then she has been attending the aftercare phase of the program.

Second, Defendant has completed the vocational training program to become a medical assistant. She completed the classroom portion of the program in April 1997, and has been doing an externship with several gynecologists in New York.[3] She completed her externship on July 11, 1997 and graduated from the program, and is scheduled to take the medical assistant board examination in September 1997. The Court has been advised that her employment prospects will then be much better.

In sum, the Probation Office has advised the Court by letter that the Court's original sentence placing Defendant on probation was an "effort [that] was well worth it, as she appears to be drug free, and is continuing to

---

**2.** In its Sentencing Opinion, the Court noted that "Defendant is a single mother with three children under the age of four years old, one of whom is three months old and is being breast fed by the Defendant ... While these family circumstances do not decrease the Defendant's culpability for her crime, these family circumstances nevertheless play a role in the Court's consideration on sentencing. Causing the needless suffering of young, innocent children does not promote the ends of justice ... The Defendant in this case has no prior criminal record and no history of substance abuse. The Court finds that she is remorseful and that she does not pose a threat to society. She fully explained here role

in this case which was essentially a transporter of drugs from New York to a designation in North Carolina. The Defendant's conduct was aberrational in character and she is capable of contributing to society in a meaningful manner." Sentencing Opinion (October 27, 1994), p. 2.

**3.** The Court received a letter of evaluation dated July 10, 1997 from two of the doctors for whom she worked, Michael S. Turano and Gerald Turano. The letter stated that "Ms. Dyce demonstrated a deep sense of commitment, loyalty and professionalism. She was punctual, reliable and follow-through (sic)."

further both her educational/vocational skills, as well as her skills as a parent."

The Court has also learned that Defendant's family has become more reliant upon her for support since her sentencing. Her father has died and the father of her two sons is no longer living with her or providing any significant support for Defendant or her children. What is more, her mother, a 64 year-old women with severe arthritis, will not be able to work much longer. One of her sons is in school. Her other son is in day care. Defendant also cares for a third child, a nephew.

After her original sentencing, Defendant was forced to send her daughter to live in England with her brother because she could not take all of the children into the residential program. To date, Defendant has been unable to regain custody of her daughter. Defendant does not have the finds to bring her daughter back to the U.S. Her daughter would also need a substantial amount of time to adjust to being under her mother's care.

## ANALYSIS

After the original sentencing in this case, the Sentencing Commission added a paragraph to the Commentary to U.S.S.G. § 5K2.0, authorizing downward departures based upon a combination of factors. As the Sentencing Commission set forth:

> The Commission does not foreclose the possibility of an extraordinary case that, because of a combination of such characteristics or circumstances, differs significantly from the "heartland" cases covered by the guidelines in a way that is important to the statutory purposes of sentencing, even though none of the characteristics or circumstances individually distinguish this case.

The Court of Appeals specifically stated that this section of the Commentary was applicable at Defendant's resentencing. *Dyce*, 91 F.3d at 1469.

Since Defendant was sentenced by the Court, the Supreme Court decided *Koon v. United States*, — U.S. —, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). There the Supreme Court set forth the departure analysis for sentencing courts to follow[4] and recognized the district court's "special competence" in deciding when a departure from the Guidelines is warranted. The Supreme Court stated: "to ignore the district court's special competence—about the 'ordinariness' or 'unusualness' of a particular case—would risk depriving the Sentencing Commission of an important source of information, namely, the reactions of the trial judge to the fact-specific circumstances of the case ..." *Koon*, — U.S. at ———, 116 S.Ct. at 2046–47.

This is certainly an "extraordinary" case as contemplated by the Guidelines. The Court finds that a downward departure from the Guidelines is warranted on the basis of a number of several individual grounds, as well as on a combination of factors.

## I. Extraordinary Post-offense and Post–Conviction Rehabilitation

Defendant's rehabilitation since her initial sentencing has been extraordinary, as described above. Since *Koon*, a number of courts have found that post-offense and post-conviction rehabilitation may be grounds for a downward departure from the Guidelines.

In a situation similar to that of Defendant, where a defendant came back for resentencing five years after his original sentencing, the Third Circuit held that post-conviction rehabilitation efforts are grounds for downward departure. *United States v. Sally*, 116 F.3d 76 (3d Cir.1997). As the Court stated, "we view the opportunity for downward departure based on extraordinary or exceptional post-conviction rehabilitation efforts as a chance for truly repentant defendants to earn reductions in their sentences based on a demonstrated commitment to repair and rebuild their lives." *Sally*, 116 F.3d at 81.

---

4. The Supreme Court set forth the departure analysis in *Koon*, — U.S. at —, 116 S.Ct at 2045, as follows:

"1) What features of this case, potentially, take it outside the Guidelines' 'heartland' and make of it a special, or unusual, case?

2) Has the Commission forbidden departures based on those features?
3) If not, has the Commission encouraged departures based on those features?
4) If not, has the Commission discouraged departures based on those features?"

Here Defendant has turned her life around and achieved real gains in rehabilitating herself and changing her behavior. She has gained a vocation and become a fine parent.

In *United States v. Griffiths,* 954 F.Supp. 738 (D.Vt.1997), the court granted a downward departure for "extraordinary rehabilitative efforts and in light of the totality of the circumstances." *Id.* at 741. The defendant in *Griffiths* had become involved in both drug use and drug sales, including three sales of LSD, one of which was for one thousand hits, over an eight-month period. Aided by his family after his arrest, the defendant "turned his life around dramatically," becoming involved in intensive drug counseling, obtaining jobs and performing well at them, furthering his education, and engaging in community service. *Id.* at 740. The Court stated:

> It is the Court's opinion that the progress Griffiths has achieved in the past nineteen months would be not only slowed, but utterly frustrated if Griffiths were incarcerated. The structure and guidance that his family, educational program, employment, and drug counseling provide are indisputably of great rehabilitative value, and such support could not be expected in prison ... the important deterrence and prevention objectives of the Sentencing Reform Act can be adequately served by home confinement and close supervision of Griffiths.

*Id.* at 742–43. See also *United States v. Shasky,* 939 F.Supp. 695 (D.Neb.1996).

■ Defendant Dyce's situation presents an even more compelling case for a downward departure than did *Griffiths.* She participated in only one transaction, not three. She has been a law abiding, productive citizen for over four years, not just nineteen months. She is also raising her two sons essentially by herself and in exemplary fashion. Just as in *Griffiths,* all of her accomplishments would be "utterly frustrated" if she were plucked out of the community and imprisoned for five years.

## II. Extraordinary Family Circumstances

Judge Tatel's concurring opinion in the Court of Appeals decision makes clear that the Court can still depart downward for extraordinary family circumstances if it makes the necessary findings. *Dyce,* 91 F.3d at 1472.[5] The Court of Appeals rejected Defendant's claim of extraordinary circumstances in part because there were other family members available to care for her three children. As the court stated: "in determining whether 'extraordinary' family circumstances exist in a particular case, a district court should focus on the effects of a defendant's sentence on third parties. In the present case, Dyce's family is clearly able and willing to take care of her children." *Dyce,* 91 F.3d at 1462.

Defendant's family circumstances have changed significantly since the Court of Appeals reviewed her case. As stated above, the children's father is gone, their grandfather has died, and their grandmother is not physically able to care for them. Defendant's family is not now able to care for her children, if they ever were.

The Second Circuit recently affirmed a downward departure for extraordinary family circumstances in a similar case, *United States v. Galante,* 111 F.3d 1029 (2d Cir. 1997). The offense in *Galante* involved the sale of almost 500 grams of heroin to an undercover agent for $95,000 in cash. The defendant in *Galante* was a 41 year-old male who was married and had two children, ages eight and nine. *Id.* at 1032. He had started a pizza parlor, which was in financial difficulties at the time of the offense. The defendant and his wife both worked, with the defendant being the primary breadwinner whose earnings kept the family "from being evicted from their home and from being forced to apply for public housing and public assistance." *Id.* at 1032.

On appeal, the Second Circuit upheld the district court's sentence of twenty-four months of home confinement[6] under the standards set forth in *Koon* as "consistent

5. It should be noted that the Court of Appeals decision in *Dyce* preceded *Koon.*

6. The Guidelines range for the defendant in *Galante was* 46—57 months.

with the expressed purpose of the sentencing law." *Galante*, 111 F.3d at 1035. As the court stated: "the reduction or elimination of time to be served in prison permitted [Galante] to continue to discharge [his] existing family responsibilities, avoided putting the families on public assistance and spared traumatizing the vulnerable emotions of [Galante's] children." *Id.* at 1037.

Defendant, a single mother, is even more vital to her children than the defendant in *Galante*. What is more, if she is imprisoned, she could lose custody of her children under N.Y. Soc.Serv. Law 384–b 3, 384–b 4(d), and 384–b 7(a) (providing that a state may terminate parental rights if a defendant is in custody for more than twelve months). In *United States v. Arize*, 792 F.Supp. 920 (E.D.N.Y. 1992), the court granted a downward departure in order to prevent the loss of parental rights in a similar case. Here Defendant is her children's only caretaker. If this court were to imprison Defendant for five years and the state were to enforce its custody law, the children would have to be uprooted from their present environment and probably placed in foster care—not a very good prospect for children of tender years.

■ The Court finds that Defendant has made out a case for a downward departure from the Guidelines on grounds of extraordinary family circumstances.

### III. Physical Condition

Defendant's physical problems since being placed on probation have been quite severe. After she suffered a stroke while at La Casita, she had to switch to an out-patient program because the in-patient program could not provide adequate care. She still requires regular medical care and takes a number of prescription medications, including HCTZ and Vasitec for high blood pressure, Glucophage for high blood sugar, potassium for muscle contractions, and a magnesium enhancement drug for a shortage of magnesium.

At U.S.S.G. § 5H1.4, p.s., the Guidelines provide that:

Physical condition or appearance, including physique, is not ordinarily relevant in determining whether a sentence should be outside the guideline range. However, an extraordinary physical impairment may be a reason to impose a sentence below the applicable guideline range, e.g. in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment.

■ The Court finds that Defendant's medical problems are so severe that she should be continued en probation to receive adequate care. Her complicated regime of medication and medical treatment can best be managed under controlled conditions at home. While prison could endanger her and would be exceptionally costly, there is every reason to believe that Ms. Dyce will be able to manage her health, family and career successfully in her current environment, as she has been doing for several years.

### CONCLUSION

The Court finds that a downward departure from the Guidelines is warranted in this case on grounds of the individual bases stated herein, as well as on the basis of a combination of factors. In the Judgment and Commitment Order issued on July 23, 1997, the Court sentenced Defendant to probation for a term of five years, to expire as originally scheduled on October 18, 1999.

It would be difficult to find a case more worthy of a downward departure from the Guidelines. Defendant has already had her liberty restrained for almost three years. What is more, since the Court sentenced Defendant on October 19, 1994 she has lost her father, the father of her two sons, her health and, at least temporarily, her daughter. This resilient woman has persevered nonetheless, successfully completing both drug treatment and a medical assistant training program. Imposing a period of incarceration in this case would not serve societal interests, or those of Defendant or her children of tender years. To remand Defendant to prison at this time would be a harsh and cruel act not recognized by any penological considerations.

All in society from time to time make mistakes. Society must be willing to take a

chance on a one-time wrongdoer who has demonstrated that she has reformed. There is no down side to the Court's decision in this case. Defendant will be monitored closely on probation for two more years. She should continue to better her own life and the lives of her children. Clearly her children will benefit from the presence of their mother, their only reliable family member in this country. Society will benefit from the addition of a productive member, and through the savings of approximately $30,000 per year, the cost of incarcerating a law violator. Even more important, a downward departure from the Guidelines in this case is simply the right thing to do.