**UNITED STATES of America, Appellant,**

v.

**Javier Aristizabal LONDONO, Defendant,**

**Diego Lopez–Aguilar, Defendant–Appellee.**

**No. 546, Docket 95–1332.**

United States Court of Appeals, Second Circuit.

Argued Nov. 27, 1995.

Decided Jan. 5, 1996.

Lebrón.

James Walden, Assistant United States Attorney for the Eastern District of New York, Brooklyn, NY (Zachary W. Carter, United States Attorney for the Eastern District of New York, David C. James, Assistant United States Attorney, of counsel), for Appellant.

B. Alan Seidler, Nyack, NY, for Defendant–Appellee.

Before: ALTIMARI and JACOBS, Circuit Judges, and CONNER, District Judge.*

JACOBS, Circuit Judge:

The Government appeals the sentence imposed on defendant Diego Lopez–Aguilar by the United States District Court for the Eastern District of New York (Weinstein, *J.*) on the ground that the court erred in granting a downward departure so that the defendant and his wife, who have undertaken fertility treatments, can have a child during the wife's remaining childbearing years. Lopez–Aguilar pled guilty to conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846.

We vacate the sentence and remand.

## BACKGROUND

Lopez–Aguilar and his wife were arrested in Manhattan on February 10, 1993, after the defendant attempted to retrieve a van which had a secret compartment containing approximately 40 kilograms of cocaine. The defendant's wife, who had accompanied him, was immediately released and was not prosecuted. Having entered the United States illegally, however, she consented to her deportation to Colombia, where she now resides.

Mrs. Lopez–Aguilar was pregnant when she was arrested and deported. The district court found that, after her return to Colombia, she suffered a miscarriage. Because of her arrest, she has been refused re-entry into the United States to visit the defendant.

Lopez–Aguilar pled guilty to a crime that carries a minimum sentence of ten years' imprisonment. The pre-sentence report calculated the defendant's offense level at 31, which reflected a three-level reduction for acceptance of responsibility. Level 31 corresponds to a range of 108 to 135 months' imprisonment.

---

* The Honorable William C. Conner, United States District Judge for the Southern District of New York, sitting by designation.

At sentencing on May 16, 1995, the district court found that Lopez–Aguilar qualified for an exemption from the ten-year statutory minimum under the "safety valve" provision of 18 U.S.C. § 3553(f). The Government does not contest this ruling.

In addition, the district court concluded that there were "extraordinary circumstances" that overcome the rule, set forth in section 5H1.6 of the Sentencing Guidelines, that "family ties and responsibilities . . . are not ordinarily relevant" in considering departures. The district court granted Lopez–Aguilar a downward departure after finding that the defendant and his wife had been trying for some time to have a child, and that their age would likely frustrate that goal if the defendant is incarcerated for a term within the Guidelines range. The district court's findings and conclusions are as follows:

> I have the power to depart from the guidelines because [t]he defendant has made a consistent and very strong effort with his wife to conceive a child or children, including payment of a very considerable amount of money for fertility advice and assistance.
>
> These procedures are very painful emotionally and difficult and expensive.
>
> Under these circumstances, when finally they did succeed and the wife conceived a child, the child was stillborn and she miscarried as a result of their own participation and resulting criminal proceedings arising from this drug matter.
>
> In view of her age and his age, if he is sentenced pursuant to the minimum permitted under the guideline, the probability of their ever conceiving again becomes close to zero.
>
> None of these considerations were taken into account by the Commission. Therefore, I will depart downward.

It was found that Lopez–Aguilar's wife was 33, and he was 29 at the time of sentencing.

The court imposed a sentence of 37 months incarceration, 5 years supervised release, and a $50 special assessment. The district court also recommended "that the defendant be deported immediately upon completion of service of sentence" and added as a condition of supervised release that he was "not to be kept in the U.S. for supervised release if he is voluntarily or in-voluntarily [sic] deported."

## DISCUSSION

■ We review *de novo* a district court's conclusion that a particular factor is a permissible basis for a departure under the Sentencing Guidelines. *United States v. Mickens,* 926 F.2d 1323, 1332 (2d Cir.1991), *cert. denied,* 502 U.S. 1060, 112 S.Ct. 940, 117 L.Ed.2d 111 (1992). We review the district court's factual findings as to the existence of that factor for clear error. *United States v. Williams,* 37 F.3d 82, 85 (2d Cir.1994). If the district court did not clearly err in its factual findings and did not err in concluding that the factor is a permissible ground for departure, then the court's resulting sentence is reviewed for reasonableness. *Id.*

■ In this case, the Government does not appeal the factual findings as clearly erroneous, and we will not delve into them *sua sponte.* We therefore accept the following relevant facts: (1) the prolonged efforts by the defendant and his wife to have a child have been financially and emotionally draining, (2) these efforts so far have not succeeded, and (3) "in view of her age and his age," a prison sentence that adheres to the Guidelines will foreclose the defendant and his wife from conceiving a child.

The district court based its authority to depart on extraordinary family circumstances. We turn to the governing policy statement under the Sentencing Guidelines: "[f]amily ties and responsibilities and community ties are not ordinarily relevant in determining whether a sentence should be outside the applicable guidelines range." U.S.S.G. § 5H1.6 (policy statement). As this Court has explained, section 5H1.6 recognizes that "[d]isruption of the defendant's life, and the concomitant difficulties for those who depend on the defendant, are inherent in the punishment of incarceration." *United States v. Johnson,* 964 F.2d 124, 128 (2d Cir.1992).

Nevertheless, this Court and other courts of appeals have recognized that a defendant's familial responsibilities may present such "extraordinary circumstances" that a downward departure in sentencing is necessary and permissible. *See, e.g., Johnson,* 964 F.2d at 129 (citing cases). This is because "[e]xtraordinary circumstances ... are by their nature not capable of adequate consideration" by the Sentencing Commission. *Id.* at 128. *See also* 18 U.S.C. § 3553(b) (court may depart from Guidelines based on a mitigating circumstance "not adequately taken into consideration by the Sentencing Commission"). Thus in *Johnson,* we affirmed a reduction of thirteen offense levels for a defendant who "was solely responsible for the upbringing of her three young children, including an infant, and of the young child of her institutionalized daughter." 964 F.2d at 129. As the district court emphasized, the departure was on behalf of the defendant's family, not the defendant. *Id.* The number of the children in *Johnson,* their tender years and their vulnerability amounted to the compelling circumstance. *Id.* We were therefore "reluctant to wreak extraordinary destruction on dependents who rely solely on the defendant for their upbringing." *Id.*

In *United States v. Alba,* 933 F.2d 1117, 1122 (2d Cir.1991), on which the *Johnson* court relied, we held that it was not an abuse of discretion for a district court to grant a downward departure for extraordinary family circumstances. Defendant Gonzalez lived with his wife and two young daughters, his disabled father and his paternal grandmother, and toiled at two jobs to support his dependent family. We found that "his is a close-knit family whose stability depends on Gonzalez' continued presence," and that "Gonzalez' incarceration in accordance with the Guidelines might well result in the destruction of an otherwise strong family unit." *Id.*

The distinctions between these cases and the claim of Lopez–Aguilar are distinctions of kind as well as degree. In *Johnson* and *Alba,* the intended beneficiaries of the departure were the dependent and vulnerable people to whom the defendants had demonstrated long-term financial and emotional commitments. The downward departures allowed the defendants to continue discharging existing obligations. And those obligations, objectively viewed, were onerous, notwithstanding the ties of family and affection that made the defendants eager to fulfill them. The fulfillment of objectively burdensome family obligations in *Alba* and *Johnson* also avoided the public expense of dealing with economic dependency and with the emotional impairment of children.

The sentence reduction sought by Lopez–Aguilar would benefit chiefly himself. His wife is not said to be dependent on the defendant. And, if she were, the record discloses no reason she could not support herself. For reasons found by the district court, there are no dependent children. Separation of this defendant from his family has no public or social costs other than his incarceration. And, whatever dependents he has or may wish to have, there is no basis for assuming that he could undertake to support them by lawful employment.

What the defendant seeks is the opportunity to build a family and to take on new obligations he does not currently have. The unremarkable effect of this defendant's incarceration is merely to foreclose opportunities for fulfillment and happiness that law-abiding people enjoy.

The emotional plight of the defendant's wife presents no extraordinary circumstance. Incarceration inevitably impacts on family life and family members. Since federal prison regulations do not provide for conjugal visits—a fact we assume is known to the Sentencing Commission—the inability to conceive children is therefore incidental to imprisonment. Moreover, demographics suggest that many people are imprisoned during their child-raising years. In the period from October 1, 1993, through September 30, 1994, the mean age for all defendants sentenced under the Guidelines was 34.9 years, and the median length of imprisonment for drug trafficking was 90.7 months. United States Sentencing Commission, *1994 Annual Report* 37, 54. Many inmates could plausibly claim as a function of age that a lengthy sentence will foreclose their chances of having children with their spouses. Age, however, is a con-

sideration that is ordinarily irrelevant in sentencing. U.S.S.G. § 5H1.1 (policy statement). Thus, Lopez–Aguilar "has shown nothing more than that which innumerable defendants could no doubt establish." *United States v. Daly,* 883 F.2d 313, 319 (4th Cir.1989) (denying downward departure for disruption of spousal and parental relationships by prison sentence), *cert. denied,* 496 U.S. 927, 110 S.Ct. 2622, 110 L.Ed.2d 643 (1990).

We further disagree with the district court's departure to the extent that it relies on a finding that the defendant and his wife had made "payment of a very considerable amount of money for fertility advice and assistance." The district court did not specify the dollar amount, but if this amount is "very considerable" relative to the income of the defendant and his wife at the time, it is entirely possible that the fertility treatments were financed in whole or part by proceeds of the drug trade. In that case, "[i]t would be ironic if the judicial system were to reward [a defendant] with a lower sentence because he was a successful drug dealer rather than an unsuccessful one." *United States v. McHan,* 920 F.2d 244, 248 (4th Cir.1990).

The law recognizes the disruption of family life by imprisonment, and it affords remedies to people who cannot support the burden of a spouse's prolonged incarceration. All three states in this Circuit provide by statute that the incarceration of a spouse may be a ground for divorce. *See* Conn.Gen.Stat. § 46b–40(b)(9) (1986); N.Y.Dom.Rel.Law § 170(3) (McKinney 1988); Vt.Stat.Ann. tit. 15, § 551(2) (1989). This is not an appealing option, but we cannot say that the Commission is unaware of it and has failed to consider the issue.

In any event, sentencing courts should not undertake to weigh purely personal issues of family planning. Obvious and compelling family commitments—the care of a parent or the nurture of a child—may be accommodated in rare circumstances without entangling a court in imponderable and intimate family decisions. But courts lack the wisdom or special resources needed to evaluate the compelling character of people's family planning

decisions. Moreover, although the Government has not challenged the defendant's good faith, we hesitate to allow a departure from the Guidelines based on a claim that lends itself so easily to fraud and perverse incentives. *See United States v. Pozzy,* 902 F.2d 133, 139 (1st Cir.) (reversing downward departure for defendant who became pregnant after arrest and feared birth in prison would stigmatize child), *cert. denied,* 498 U.S. 943, 111 S.Ct. 353, 112 L.Ed.2d 316 (1990).

## CONCLUSION

For the reasons set forth above, we vacate the sentence imposed by the district court and remand for resentencing consistent with this opinion.