**UNITED STATES of America, Appellant,**

**v.**

**Michael GALANTE, Defendant–Appellee.**

**No. 831, Docket 96–1464.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 17, 1996.

Decided May 2, 1997.

Daniel C. Becker, Assistant United States Attorney, New York City (Mary Jo White, United States Attorney for the Southern District of New York, Guy Petrillo, Assistant United States Attorney, New York City, of counsel), for Appellant.

Philip L. Weinstein, The Legal Aid Society, Federal Defender Division, Appeals Bureau, New York City, for Defendant–Appellee.

Before: KEARSE, CARDAMONE, Circuit Judges, and POLLACK,* District Judge.

CARDAMONE, Circuit Judge:

This appeal presents a single issue for us to decide: whether a sentencing court abused its discretion when it departed downward from the Sentencing Guidelines on account of defendant's family circumstances. Because the Supreme Court believes that in this area experience is the best teacher, it instructs that district courts, which have the most, are to be deferred to by appellate courts, which have much less.

Michael Galante (defendant or appellee) pled guilty on September 12, 1995 in the United States District Court for the Southern District of New York before Judge Lawrence M. McKenna to a charge of conspiracy to distribute and possess with intent to distribute heroin, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B). Determining that Galante's family circumstances were extraordinary, Judge McKenna departed downward from the adjusted guideline range and sentenced Galante to time served (the eight

days Galante was imprisoned between his arrest and subsequent release on bail), a five-year term of supervised release with special conditions, and a $50 special assessment. The special conditions included, *inter alia*, that Galante serve 24 months of home detention, perform 225 hours of community service after the period of home detention, and enroll in an English as a second language program.

The government (appellant) appeals from the sentence imposed June 12, 1996 contending it was an abuse of the district court's discretion to depart downwardly because of Galante's family circumstances. For the reasons that follow, we affirm.

## BACKGROUND

On August 11, 1994 Galante met with a confidential informant who was wearing a hidden recording device. During the meeting Galante told the informant he was able to get heroin from "Colombians." Defendant also said that for brokering the drug deal he would earn $5,000. He met again with the informant the following week, at which time he provided a sample of heroin and explained that he wanted to sell one kilogram of heroin for $95,000 in cash. Five days later the informant came to Galante's restaurant to complete the drug deal. The two men went to a nearby automobile where an undercover Drug Enforcement Agent showed defendant $95,000 in cash. Upon seeing the money, Galante told the informant the heroin would be there shortly. Minutes later, he obtained approximately half a kilogram of heroin from three individuals.[1] When he attempted to consummate the heroin sale with the informant, defendant was arrested.

On September 12, 1995 defendant pled guilty, without a plea agreement, to a superseding information charging him with the conspiracy and possession with intent to distribute heroin crimes recited above. In the Presentence Investigation Report (report), the Probation Department attributed responsibility for 478.97 grams of heroin to Galante.

---

* The Honorable Milton Pollack, Senior United States District Court Judge for the Southern District of New York, sitting by designation.

1. Two of those individuals, Jorge Diaz and Armando Moreno, were arrested and charged with

conspiracy to sell heroin. Each pled guilty and was sentenced to a 46–month term of imprisonment, a four-year term of supervised release, and a $50 special assessment.

From a base offense level of 28, the report recommended a two-level downward adjustment for meeting the safety-valve criteria and an additional three-level downward adjustment for acceptance of responsibility. Given his criminal history category of I, this resulted in a guideline range of 46–57 months.. The report recommended Galante be sentenced to a prison term of 46 months.

On June 7, 1996 defendant sought a downward departure based upon extraordinary family circumstances. At that time, appellee was 41 years old and prior to the instant matter had no criminal convictions and no criminal record of any kind.. He had been married to the same wife for more than 10 years and they had two children, Jonathan and Jennifer, ages nine and eight. Their marriage was stable. The family lived together in a modest, two-bedroom apartment in a three-family home converted to apartments in Queens, New York. In order to open his restaurant, a pizza shop, defendant borrowed around $30,000 between 1993 and 1995, but his business failed to thrive and at the time of this offense he was in financial difficulties.

Appellee asserted that his monthly earnings kept his family from being evicted from their home and from being forced to apply for public housing and public assistance. He stressed the active role he fills in his children's lives. Although defendant and his wife both worked, Galante was the primary breadwinner; Mrs. Galante's employment opportunities are limited because she speaks little English. At the time of sentencing, defendant, who had given up his own business, earned $1,400 per month from his employment at a pizza parlor; Mrs. Galante earned $600 per month at a minimum wage job.

The district court was provided with letters from family and friends attesting to defendant's family's dependence on him. There was evidence that appellee took his two children to school, and—because the family could not afford child care—in the afternoons and on weekends, stayed home to care for them and to cook the family's meals so that his wife could work during those hours. The letters and defense counsel described Galante as a dedicated father who made many sacrifices for his family, and who considered the education of his children important. The letters also portrayed his devotion to his parents, and told how he had helped his mother to wash and feed his father after the latter was disabled in an automobile accident. The letters further revealed that he had visited his father frequently after his father was hospitalized in a chronic care facility. There was proof that neither Galante's parents nor his siblings could provide financial assistance for his family.

The government opposed a downward departure on the ground that Galante faced no more family responsibilities than a typical married defendant with two children. Although his family obviously would suffer were he incarcerated, the government asserted, nothing about these family circumstances was extraordinary.

Following argument on the downward departure application on June 12, 1996, Judge McKenna granted the departure on the basis of extraordinary family circumstances, and departed from the adjusted offense level of 23 to an offense level of 10, which resulted in the sentence of the five-year term of supervised release with the special conditions already described. This appeal followed.

## DISCUSSION

### I   Downward Departure for Family Circumstances

The sole issue, as stated, is whether the district court abused its discretion when it downwardly departed based on Galante's family circumstances.

The Sentencing Guidelines, in relevant part, provide:

Under 18 U.S.C. § 3553(b) the sentencing court may impose a sentence outside the range established by the applicable guideline, if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines

that should result in a sentence different from that described." . . .

. . . .

An offender characteristic or other circumstance that is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range may be relevant to this determination if such characteristic or circumstance is present to an unusual degree and distinguishes the case from the "heartland" cases covered by the guidelines in a way that is important to the statutory purposes of sentencing.

U.S.S.G. § 5K2.0, p.s. The Guidelines state, in addition, that "[f]amily ties and responsibilities and community ties are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." U.S.S.G. § 5H1.6, p.s.

We have read § 5H1.6 to mean that when a sentencing court determines the circumstances related to family ties and relationships are extraordinary, the Guidelines do not bar it from considering them as a basis for a downward departure. *See United States v. Sharpsteen,* 913 F.2d 59, 63 (2d Cir.1990); *see also United States v. Londono,* 76 F.3d 33, 36 (2d Cir.1996) ("[T]his Court and other courts of appeals have recognized that a defendant's familial responsibilities may present such 'extraordinary circumstances' that a downward departure in sentencing is necessary and permissible."); *United States v. Johnson,* 964 F.2d 124, 129 (2d Cir.1992) ("Section 5H1.6's phrasing confirms the Commission's understanding that ordinary family circumstances do not justify departure, but *extraordinary* family circumstances may.").

## II  Standard of Review for Such Departures

This case illustrates the tension that exists between the Guidelines' somewhat rigid sentencing grid and the authority of a sentencing court to move outside those strictures in order to impose an individualized sentence in a given case. A brief examination of the sentencing law helps rationalize when such a departure will be upheld on appeal.

The Sentencing Reform Act of 1984, 98 Stat.1988, 18 U.S.C. §§ 3551 *et seq.* and 28 U.S.C. §§ 991–998, had as one of its major purposes the avoidance of unwarranted sentence disparities among defendants guilty of similar conduct with similar records. *See* 18 U.S.C. § 3553(a)(6). The same statute, however, instructs a sentencing court in determining the sentence to be imposed to consider "the nature and circumstances of the offense and the history and characteristics of the defendant." *Id.* § 3553(a)(1).

Thus, although the sentencing law seeks to eliminate sentencing disparities between similarly situated defendants, it also aims to maintain "sufficient flexibility to permit individualized sentences when warranted by mitigating or aggravating factors" not accounted for in general sentencing practices. 28 U.S.C. § 991(b)(B); *see* 18 U.S.C. § 3553(b). As an aid to maintaining this flexibility, Congress provided in 18 U.S.C. § 3661 that: "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."

The Guidelines reflect this broad view of the information that may be considered. Thus, they state that when determining what sentence is to be imposed and "whether a departure from the guidelines is warranted," the sentencing court "may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law." U.S.S.G. § 1B1.4.

Nonetheless, the Supreme Court explained that before a sentencing court departs downward, it must determine that aspects of a case are "unusual enough for it to fall outside the heartland of cases in the Guideline. To resolve this question, the district court must make a refined assessment of the many facts bearing on the outcome, informed by its vantage point and day-to-day experience in criminal sentencing." *Koon v. United States,* —— U.S. ——, —— – ——, 116 S.Ct. 2035, 2046–47, 135 L.Ed.2d 392 (1996). And, the court continued:

Whether a given factor is present to a degree not adequately considered by the Commission, or whether a discouraged factor nonetheless justifies departure because it is present in some unusual or exceptional way, are matters determined in large part by comparison with the facts of other Guidelines cases. District courts have an institutional advantage over appellate courts in making these sorts of determinations, especially as they see so many more Guidelines cases than appellate courts do. In 1994, for example, 93.9% of Guidelines cases were not appealed. To ignore the district court's special competence—about the "ordinariness" or "unusualness" of a particular case—would risk depriving the Sentencing Commission of an important source of information, namely, the reactions of the trial judge to the fact-specific circumstances of the case[.]

*Id.* at ——, 116 S.Ct. at 2047.

■ Because of these explanations, we do not engage in *de novo* review of the district court's decision to depart downward, and overturn such departure only for an abuse of its discretion. *Id.* at ——, 116 S.Ct. at 2043.

### III  Review Applied in This Case

In tackling review in the case at hand, we must deal with the government's contentions that defendant's family circumstances are ordinary and that the trial court improperly considered socio-economic conditions.

#### A.  *Defendant's Family Circumstances Not Ordinary*

The government first maintains that Judge McKenna erred in his application of the Guidelines and our precedents in finding Galante's family circumstances sufficiently "extraordinary" to merit a downward departure. The government believes instead that Galante's family responsibilities are ordinary, and that his family would suffer the same type and degree of injury felt by any family where a parent or spouse is incarcerated.

■ Family circumstances, although not a forbidden basis for departing outside the Guidelines' heartland, are a discouraged basis for departure because the Commission

has deemed them to be not generally relevant. *See* —— U.S. at ——, 116 S.Ct. at 2045. As we noted in *Johnson,* "[d]isruption of the defendant's life, and the concomitant difficulties for those who depend on the defendant, are inherent in the punishment of incarceration." 964 F.2d at 128. The presence of hardship resulting from imprisonment therefore does not warrant a downward departure. Only if the sentencing court determines that the hardship in a particular case is exceptional, may it depart downward on that basis.

■ (1) *"Exceptional" in Our Cases:* What is "exceptional" is—like the beauty of Botticelli's "Venus Rising From the Sea"—a subjective question because the overall conclusion is one resting in the eye of the beholder. Because well over 90 percent of Guidelines cases are not appealed, district courts—which see so many more—have an institutional advantage over appellate courts in comparing one sentencing case to another. *See Koon,* —— U.S. at —— – ——, 116 S.Ct. at 2046–47. Hence, the sentencing court serves as the "eye of the comparer" because it is in the best position to make comparisons and decide what combination of circumstances take a case out of the ordinary and make it exceptional. As an appellate court, we owe substantial deference to the district court's findings in this regard because they result from the traditional exercise of its more informed discretion. *See id.*

Thus, we upheld a departure based on family circumstances where the defendant, his wife, two children and grandmother all lived with defendant's disabled father, who "depend[ed] on [defendant] to help him get in and out of his wheelchair," and the sentencing court had departed downward after concluding that imprisonment of the defendant risked destruction of an otherwise strong family unit. *United States v. Alba,* 933 F.2d 1117, 1122 (2d Cir.1991). In affirming we hold that the sentencing court's "determination to depart downwardly relying on [defendant's] family circumstances is not an abuse of its discretion." *Id.*

Similarly, in *Johnson,* we allowed a downward departure to stand, observing that the family circumstances of the defendant were

"substantially more compelling than that of the defendant in *Alba.*" 964 F.2d at 129. Johnson was solely responsible for the upbringing of three children and her grandchild and, thus, "faced more than the responsibilities of an ordinary parent, more even than those of an ordinary single parent." *Id.*

Here, acknowledging that it is the families of defendants that are the intended beneficiaries of downward departures on the ground of extraordinary circumstances relating to family responsibilities, the sentencing court thought that if defendant were imprisoned the family unit would probably be destroyed, and defendant's wife and children relegated to public assistance, which, it explained, was a matter worth considering, but not by itself a ground for departure. The district judge stated that "removal of the father from this unit at this particular point in time would have a disastrous effect on the children in terms of possibilities of their education and upbringing." That is, it would terminate present family responsibilities which Galante has effectively shouldered and continues to discharge.

Judge McKenna emphasized Galante's wife's limited earning capacity and her difficulty with English, and compared Galante's family circumstances with those of the defendant in *Alba.* He found the two cases similar, noting that "[Galante] is the principal support of a family consisting of his wife and two children age eight and nine. While no older family member lives with them, defendant's father is hospitalized, and his mother is over 65 and although working at present, may require some assistance in the future." In this connection, defense counsel informed the district court that defendant's mother is a 66–year–old factory worker, who earns $7,000 a year and receives an additional $325 a month from Social Security. Galante's father is critically ill and on a life support system in a chronic care facility.

The government avers that Galante's case is less compelling than those of the defendants in *Alba* and *Johnson.* In those cases, it contends, the circumstances were exceptional because the imprisonment of the defendant would have left extremely vulnerable dependents with no alternative means of support. Here, the government argues, there is a college-educated, employed mother who would remain in the home, the children are of school-age and therefore spend a good deal of the day outside of the home, and there are no vulnerable dependents.

As an initial matter, we note that *Alba* does not support the government's argument. As we stated in *Johnson,* the defendant's spouse in *Alba* could have cared for the children and elderly dependents, had the defendant been incarcerated. *See* 964 F.2d at 129. But, the primary difficulty with the government's position is that it draws inferences markedly different from those the district court drew from the same facts. For example, the government characterizes Galante's wife as "employed" and "college educated." While it is true that Galante's wife obtained a college degree in Colombia (her country of origin) prior to moving to the United States, the district court focused on the fact that she speaks very little English, and does not earn even enough to pay the family's modest rent. Her earnings come to $600 a month at a minimum wage job, and she only works during the hours that her husband is available to care for the children.

(2) *Review of "Exceptional":* The government's arguments overestimate our willingness to second-guess the sentencing court's fact-intensive determination. Prior to the advent of the Guidelines, the Supreme Court taught reviewing courts to "grant substantial deference to the ... discretion that trial courts possess in sentencing convicted criminals." *Solem v. Helm,* 463 U.S. 277, 290, 103 S.Ct. 3001, 3009, 77 L.Ed.2d 637 (1983). Nor, it added, was it the appellate court's role to substitute its judgment with respect to a specific sentence for that of the sentencing court. *See id.* at 290 n. 16, 103 S.Ct. at 3010 n. 16.

Subsequent to the Guidelines' enactment under the Sentencing Reform Act of 1984, 18 U.S.C. §§ 3551 *et seq.,* 28 U.S.C. §§ 991–998, the Supreme Court reiterated this rule of deference. Noting that the Sentencing Reform Act had provided *limited* appellate review of sentencing decisions, the Court observed that the Act did not alter the deference an appellate court owes to the

exercise of a sentencing court's discretion. *See Williams v. United States,* 503 U.S. 193, 205, 112 S.Ct. 1112, 1121–22, 117 L.Ed.2d 341 (1992). The decision to depart from the guideline range, the Supreme Court instructed, is a decision left solely to the sentencing court. *See id.* The Guidelines' regime has not altered the principle that "'it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence.'" *Id.* at 205, 112 S.Ct. at 1121 (quoting *Solem,* 463 U.S. at 290 n. 16, 103 S.Ct. at 3010 n. 16). That is to say, we may not simply use our discretion to displace the discretion of the trial court. We are generally obliged to defer to a sentence imposed in district court, in light of that court's special competence regarding the exceptional circumstances present in a sentencing case. Such remains the rule today. *See Koon,* —— U.S. at —— – ——, 116 S.Ct. at 2046–47.

■ The fact that we will ordinarily defer to the sentencing court's discretion does not mean that this will always be so. The Sentencing Reform Act, the Guidelines, and decisional law make clear that a trial judge's discretion when granting a downward departure is to be exercised prudently in light of the Guideline's aim of reducing sentencing disparity—while at the same time considering the history and characteristics of an individual defendant—and to be applied in line with precedents of the Supreme Court and of this Court. As a consequence, although a trial court's discretion is not straitjacketed, it is to be reined in. There remains some open field for the trial court's exercise of discretion, but the recited constraints have put boundary line fences on that field. The test of discretion asks whether the circumstances

relied upon to justify a downward departure are so far removed from those found exceptional in existing case law that the sentencing court may be said to be acting outside permissible limits; then, and only then, should we rule it has misused its discretion.

■ Here, we recognize that Galante's family circumstances are not identical to those of the defendants in *Johnson* and *Alba*—family circumstances seldom are. However, the family circumstances the district court found exceptional are not so far removed from those found exceptional in existing case law [2] that we would be prepared, in view of the deferential standard of review *Koon* imposes on us, to rule the decision to depart downward an abuse of the sentencing court's discretion. Nor do we think the *extent* of the departure here (24 months home detention, 225 hours community service plus five years supervised release) can be said to be an abuse of discretion, for it was comparable to the departures in *Alba* (sentencing range 41 to 51 months reduced to six months in a halfway house and two years of supervised release), and *Johnson* (sentencing range 46 to 57 months reduced to six months home detention, three years supervised release and restitution). In sum, the trial court's action was consistent with the expressed purposes of the sentencing law and not inconsistent with precedent. There is no basis therefore upon which to rule that the downward departure was an abuse of the district court's discretion.

### B. *Economic Condition of Defendant's Family Not Improperly Considered*

■ The government also insists that while Galante's family might be compelled to

---

**2.** *See, e.g., United States v. Rose,* 885 F.Supp. 62 (E.D.N.Y.1995) (downward departure granted where defendant had assumed role of surrogate father to his cousins and contributed to the household budget of his grandmother, who had no social security or pension); *United States v. Ekwunoh,* 888 F.Supp. 369, 373–74 (E.D.N.Y. 1995) (downward departure granted where defendant was sole support for three young children and oldest child had emotional problems); *United States v. Vaughan,* No. 92 Cr. 575–04, 1993 WL 119704 (S.D.N.Y. Apr.15, 1993) (downward departure granted where defendant was sole caretaker for his wife, who suffered from Alzheimer's disease); *United States v. McGee,* 802

F.Supp. 843, 844 (E.D.N.Y.1992) (downward departure granted where defendant's nephew depended on her for safety, health and education); *United States v. Gerard,* 782 F.Supp. 913 (S.D.N.Y.1992) (downward departure granted where defendant was sole care provider and breadwinner for her two teenage children); *United States v. Handy,* 752 F.Supp. 561, 564 (E.D.N.Y. 1990) (downward departure granted where defendant was single mother raising three teenage children); *see also United States v. Najjar,* No. 96–1478, 1997 WL 87231 (2d Cir. Mar. 3, 1997) (summary order) (affirming departure where, inter alia, incarceration of defendant would deprive family of means of support).

apply for public assistance were he imprisoned, socio-economic conditions are not to be considered in determining a downward departure. The Guidelines enumerate certain factors upon which departure may not be based. These include race, sex, national origin, creed, religion, and socioeconomic status. U.S.S.G. § 5H1.10, p.s. This policy statement does not mean that the economic dependency of a family on a defendant is irrelevant when determining whether the family circumstances are sufficiently extraordinary to allow downward departure under U.S.S.G § 5H1.6. Quite the contrary. The financial dependency of the defendants' families in *Johnson* and *Alba* were among the factors considered relevant in departing downward in those cases. Specifically, we observed that the "beneficiaries of the downward departure [in both cases] were the dependent and vulnerable people to whom the defendants had demonstrated long-term financial and emotional commitments." *Londono,* 76 F.3d at 36. In those cases, as in this one, the reduction or elimination of time to be served in prison permitted the defendants to continue to discharge their existing family responsibilities, avoided putting the families on public assistance and spared traumatizing the vulnerable emotions of defendants' children.

### C. *Floodgates Argument*

Finally, the government declares that if Galante's family circumstances are found to be extraordinary, then any defendant with children and financial difficulties would become a presumptive candidate for departure. We disagree. Departure was not granted here simply because defendant has two children or lives below the poverty line. Here, the district court departed downward because it determined, in light of its sentencing experience, that the hardship on Galante's family was exceptional to a degree sufficient to take the case out of the heartland. As discussed above, that decision was not an abuse of discretion. The district court's downward departure in this case changes neither the principle that "[f]amily ties and responsibilities and community ties are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range," U.S.S.G. § 5H1.6, p.s., nor

the rule that a district court cannot depart on the basis of family circumstances unless it finds the case extraordinary.

### CONCLUSION

It may well be true that since the facts might reasonably be construed in a different light—as, for example, the government does—we might—had we been the sentencing court—have decided this case differently than Judge McKenna did. But because we may not simply substitute our judgment for his, we hold that he did not abuse his discretion in determining that here exceptional family circumstances warranted a downward departure.

Accordingly, we affirm the sentence imposed on defendant.

KEARSE, Circuit Judge, dissenting:

I respectfully dissent from the approval of a downward departure, relieving Michael Galante, convicted of conspiracy to distribute heroin, of any term of imprisonment on the basis of his family circumstances.

One of the major purposes of the introduction of the Sentencing Guidelines was the avoidance of unwarranted disparities among defendants guilty of similar conduct with similar records. Accordingly, "[b]efore a departure is permitted, certain aspects of the case must be found unusual enough for it to fall outside the heartland of cases in the Guideline." *Koon v. United States,* —— U.S. ——, ——, 116 S.Ct. 2035, 2046, 135 L.Ed.2d 392 (1996). Although as an appellate court we see only a fraction of the number of cases decided by the district courts, there are numerous published decisions with regard to family circumstances that persuade me that the findings of the district court in the present case—principally that Galante is the family's primary financial support, that he takes care of his children while his wife engages in part-time employment, that his wife's job prospects are limited, and that his children are eight and nine years of age and would be harmed in their education and upbringing if he went to prison—do not reveal family circumstances that are outside the heartland,

and hence that the departure is an abuse of discretion.

The removal of a source of family income and the disruption of family life are normal consequences of the imposition of a prison sentence. Thus, some district courts have denied departures in circumstances that seem no less compelling than the circumstances here. *See, e.g., United States v. Malpeso,* 943 F.Supp. 254, 257 (E.D.N.Y. 1996) (denying departure although one of defendant's young children showed signs of emotional distress, the family was encountering financial difficulties, and defendant's wife, unable to find competent, affordable full-time day care for the children, had been unable to obtain employment); *United States v. Hernandez,* 1994 WL 469366, at *4 (S.D.N.Y. 1994) (denying departure for mother although father was already in prison, finding "nothing more than that which innumerable defendants could no doubt establish: namely, that the imposition of prison sentences normally disrupts ... parental relationships" (internal quotation marks omitted)); *United States v. Caba,* 911 F.Supp. 630, 642 (E.D.N.Y.) ("[T]he court does not find anything in [the defendant's] circumstances that sets him apart from other defendants who have been their family's sole bread winner or whose children will have difficulty in dealing with their father's incarceration to merit a downward departure."), *aff'd mem.,* 104 F.3d 354, 1996 WL 685764 (2d Cir.1996).

Similarly, other Circuits have strictly reviewed "family circumstances" departures and have often reversed, reasoning that "the disintegration of existing family life or relationships is insufficient to warrant a departure, as that is to be expected when a family member engages in criminal activity that results in a period of incarceration." *United States v. Canoy,* 38 F.3d 893, 907 (7th Cir. 1994). *See also United States v. Dyce,* 91 F.3d 1462, 1468 (D.C.Cir.) (as "innumerable defendants could no doubt establish," a "prison sentence[ ] normally disrupts ... parental relationships") (internal quotation marks omitted), *cert. denied,* —— U.S. ——, 117 S.Ct. 533, 136 L.Ed.2d 418 (1996); *United States v. Brown,* 29 F.3d 953, 961 (5th Cir.) (same), *cert. denied,* 513 U.S. 1021, 115 S.Ct.

587, 130 L.Ed.2d 501 (1994); *United States v. Berlier,* 948 F.2d 1093, 1095–96 (9th Cir.1991) (same); *United States v. Goff,* 907 F.2d 1441, 1446 (4th Cir.1990) (same). In the two cases we have found that are most similar to the present case, *i.e.,* cases in which the defendant was the primary breadwinner in a two-parent household with children, family-circumstance departures have been disapproved. *See United States v. Bell,* 974 F.2d 537, 538–39 (4th Cir.1992) (reversing departure that was based on facts that defendant "had been a member of a stable family unit for a period of eighteen years," that his "children needed him for guidance, family life, and financial support," and that his wife could not adequately support the family); *United States v. Rushby,* 936 F.2d 41, 42–43 (1st Cir.1991) (departure not warranted where defendant had "strong family ties," "a solid marriage for ten years," and "two sons, aged seven and nine," even though defendant was "steadily and successfully employed in his own" business and, as such, was "the main breadwinner of the family [who] function[ed] as a caretaker ... when his wife [wa]s working" and even though defendant did "chores (such as grocery shopping and snow shoveling) for his wife's grandmother").

Even family-circumstances pleas of defendants who are single parents, which would seem more compelling insofar as financial support, caregiving, and preservation of a family unit are concerned, have normally been rejected. *See, e.g., United States v. Brand,* 907 F.2d 31, 33 (4th Cir.) (reversing departure, noting that "[a] sole, custodial parent is not a rarity in today's society, and imprisoning such a parent will by definition separate the parent from the children"), *cert. denied,* 498 U.S. 1014, 111 S.Ct. 585, 112 L.Ed.2d 590 (1990); *United States v. Carr,* 932 F.2d 67, 72–73 (1st Cir.), *cert. denied,* 502 U.S. 834, 112 S.Ct. 112, 116 L.Ed.2d 82 (1991); *United States v. Headley,* 923 F.2d 1079, 1082–83 (3d Cir.1991); *United States v. Brown,* 29 F.3d at 961; *United States v. Harrison,* 970 F.2d 444, 447–48 (8th Cir. 1992); *United States v. Webb,* 49 F.3d 636, 638–39 (10th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 121, 133 L.Ed.2d 71 (1995); *United States v. Mogel,* 956 F.2d 1555, 1565 (11th Cir.), *cert. denied,* 506 U.S. 857, 113

S.Ct. 167, 121 L.Ed.2d 115 (1992); *United States v. Dyce*, 91 F.3d at 1467–68.

The present case does not have the extra ingredients that have led this Court in two cases to approve departures for family circumstances. In *United States v. Johnson*, 964 F.2d 124 (2d Cir.1992), the defendant was a single parent who faced "extraordinary" parental responsibilities, "more than the responsibilities of an ordinary parent, more even than those of an ordinary single parent," for she "was solely responsible for the upbringing of her three young children, including an infant, and of the young child of her institutionalized daughter." *Id.* at 129. In *United States v. Alba*, 933 F.2d 1117 (2d Cir.1991), the defendant had responsibility not only for his wife and children but also for his grandmother and for his disabled father who depended on the defendant's physical strength "to help him get in and out of his wheelchair." *Id.* at 1122.

The district court's speculation in the present case that Galante's parents "may require some assistance in the future" hardly brings this case into the orbit of *Alba*, so as to warrant elimination of imprisonment now. The court's findings that Galante is the primary caretaker and financial support, that his wife's job prospects are limited, and that his children would be adversely impacted in their education and upbringing, do not suffice to show that this case is outside the heartland of cases in which a parent engages in criminal activity that results in a period of incarceration.

In short, it seems to me that approval of the present departure either guarantees disparities in sentencing or eliminates the family-impact "heartland" altogether.