**UNITED STATES of America, Appellant,**

v.

**Solomon SPREI, Defendant–Appellee.**

**Docket No. 97–1206.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 12, 1997.

Decided May 28, 1998.

George S. Canellos, Assistant U.S. Attorney, New York City (Mary Jo White, U.S. Attorney, Craig A. Stewart, Assistant U.S. Attorney, of counsel), for Appellant.

Andrew G. Patel, New York City, for Defendant–Appellee.

Before OAKES, CARDAMONE and PARKER, Circuit Judges.

OAKES, Senior Circuit Judge:

The United States of America appeals from a sentence imposed on appellee Solomon Sprei in the United States District Court for the Southern District of New York, Lewis A. Kaplan, *Judge*. The district court departed downward in response to a motion

made by Sprei's rabbi on behalf of the Orthodox Jewish sect of which Sprei is a member. Finding that the custom of Sprei's community is for fathers to arrange the marriages of their children, the court made a downward departure in sentencing, based in part on a determination that a long period of incarceration would unduly harm the marriage prospects of three of Sprei's children. We vacate and remand.

## I. BACKGROUND

On January 17, 1996, Sprei was indicted on charges of conspiracy, commercial bribery, mail fraud, and wire fraud. The charges stemmed from Sprei's involvement in a scheme to defraud several insurance companies.

The Government's charge was that, beginning in early 1990, Sprei and a partner convinced Empire Blue Cross/Blue Shield ("Blue Cross") to issue low-cost group health insurance policies to "associate members" of two labor unions. Blue Cross issued the policies and set the premium rates based on the established record of past health-related expenditures of union members. Through an arrangement with the unions, Sprei and his partner then allegedly sold memberships in the policies to the general public at a premium. Because many who bought insurance through sham "memberships" in the unions had pre-existing conditions, the scam resulted in large losses to Blue Cross, which canceled the policies in March of 1991. According to the Government, Sprei then secured coverage from State Mutual Life Assurance Company of America ("State Mutual") by providing forged Blue Cross records showing a profit, rather than a loss, on the policies. State Mutual also sustained substantial losses until the fraud came to light in late 1991. State Mutual thereupon ceased paying claims filed under the policies, causing members of the public who thought they had valid health insurance to incur large medical bills. As a result of the fraud scheme, Blue Cross sustained actual losses of approximately $8,888,-891, State Mutual suffered a loss of $6,566,-

086, and approximately $9.4 million of unpaid claims were filed with State Mutual, of which State Mutual ultimately agreed to pay forty percent.

Before trial, on October 28, 1996, Sprei pled guilty to two counts of conspiracy in violation of 18 U.S.C. § 371 pursuant to a written plea agreement with the Government. The parties stipulated in the agreement to an offense level category of 20 or 21,[1] and a Criminal History Category of I. Both parties agreed not to request a departure from the applicable Sentencing Guidelines range.

The United States Probation Office then prepared a Pre-Sentence Report summarizing Sprei's personal circumstances and his offense conduct. The Report noted that Sprei is married and lives with his wife and five of his six children, ages eight to eighteen, in the Borough Park section of Brooklyn. His father and two brothers also live close by. Sprei and his family are members of an Orthodox Jewish sect known as the "Bobov Community."

The Report adopted the application of the Sentencing Guidelines agreed to by the parties in the plea agreement. The Probation Office therefore recommended an offense level of 21, and a Criminal History Category of I. This analysis yielded a sentencing range of thirty-seven to forty-six months. The Probation Office did not recommend any departures, and advocated a sentence of forty-two months' imprisonment. According to the Government, the sentencing recommendation read as follows:

> The defendant profited to the tune of at least one million dollars as a result of this calculated and deliberate scheme. It appears that avarice was the defendant's sole motivation for committing the offense. It appears that his residence, which is in his wife's name, was purchased from the proceeds of the crime. As such, a sentence in the middle of the range is recommended as it appears to address the sentencing objec-

---

1. The discrepancy resulted from a dispute over whether Sprei should receive a three-level or a two-level reduction for acceptance of responsibility under section 3E1.1 of the United States

Sentencing Guidelines, based on whether he had timely notified the authorities of his intention to plead guilty.

tives of punishment and general deterrence.

On March 13, 1997, in advance of Sprei's sentencing hearing, the district court received a downward departure motion submitted by Rabbi Solomon Halberstam and the Bobov Community. Attached to the motion were thirty-seven letters from family and community members providing details of Sprei's family circumstances and his history of volunteer work and charitable contributions.

Many letters described the "devastating impact" that a long period of incarceration would have on Sprei's family. Sprei's father wrote of the anguish that he would face, as a survivor of the concentration camps, if his son were taken away and sent to prison. Sprei's wife wrote of a recent injury she had sustained that would make it difficult for her to care for the family and provide the necessary financial support for a period of time. She also stated,

Our six children have reacted in different ways, but all have been affected. Most affected is our eighteen year old. You probably are not familiar with the marriage practices in our community. But a boy in this category is ready for marriage in chasidic circles. Our son is not being considered by any family. He is a fine good boy, a boy who has excelled in school, had friends and an excellent record, but no family is willing to listen to a match which is the way marriages are arranged in our community. The cause is a combination of lost respect and fear that my husband will end up in prison. If he does, it will destroy my son's chances for a decent match.

Rabbi Halberstam wrote, in relevant part,

I know very well the impact a sever[e] judgment will have on his wife, his children his father and his in-laws. He is the sole supporter of his family. His children will be set back even more than they have been already. I dread to predict the impact on the structure of this family. His children of marriageable age will not be able to find spouses for themselves and in our community this is a devastating situation. Without their father to help them and seek out matches for them and to guarantee the

financial arrangements they will be as "living orphans".

At sentencing, the Government objected to the District Court's consideration of the brief submitted by Rabbi Halberstam and the Bobov Community, and supportive oral argument by their attorney. However, the Government did not object to the district court's consideration of the attached letters as exhibits. Judge Kaplan advised the Government that he was thinking about departing sua sponte from the applicable Guidelines range based on the letters, and invited the Government to address the bases for departure raised in the Bobov Community motion. The Government argued briefly against both a family-circumstances and a good-works basis for departure.

At the conclusion of the sentencing hearing, the district court departed downward six offense levels to an offense level of 15. Sprei was then sentenced to eighteen months' imprisonment with three years of supervised release. The court made clear that it based its decision on both Sprei's family circumstances and his history of good works. With regard to Sprei's family circumstances, the court stated,

To me the most significant factor relating to the family situation which quite clearly never was considered by the Sentencing Commission is the impact that a lengthy term of imprisonment would have on the children in consequence of the unusual customs of the community of which the Sprei's are a part, which, without in any way passing any judgment, simply are quite different from what people come to assume in 20th century America in respect of the subject of marriages....

Now, certainly defendants are sentenced to lengthy prison terms in circumstances in which they have aged parents. That in itself is not unusual.... I would not depart on that ground alone, nor would I depart alone on either the basis of Mrs. Sprei's condition or the fact that this is a close family with heavy dependence on Mr. Sprei. Nor, for that matter, would I depart on the basis of all three of those

considerations. But when I take it together, with the effect of a lengthy sentence on the marriage prospects of so many of the Sprei children, I think that the aggregate of circumstances and indeed the marriage prospects circumstance alone warrant some departure. So I will depart on that basis.

In sentencing Sprei to eighteen months, the court explained that it had determined the extent of the departure with particular reference to the marriage prospects of Sprei's children.

> [T]he basis for the departure counsels some leniency. It also suggests that the period of incarceration ought to be related to the ages of the children, whose interests play such an important role in my thinking about departure....
>
> .     .     .     .     .
>
> ... [I]n coming to the figure of 18 months, I realize that there will be an adverse impact in terms of the marriage situation of Mr. Sprei's 18–year–old. I have considered that and felt that in view of the gravity of the crime, to avoid that would involve too great a departure in all circumstances, but that I selected 18 months with a view to the fact that the next oldest child is 16, and it is my hope to avoid a serious adverse impact with respect to the next child and to minimize the impact on the 18–year–old.

## II. DISCUSSION

The Government raises several related arguments for reversing Sprei's sentence on appeal. The Government contends that (1) the district court relied on forbidden religious and socio-economic grounds, couched as "family circumstances," in departing downward from the Guidelines range; (2) even if the departure were based on Sprei's family circumstances, the asserted harms to Sprei's family are not sufficiently extraordinary to warrant departure; and (3) in determining that a departure was warranted to alleviate hardships imposed on Sprei's children of marriageable age, the district court relied on unsupported assertions and erroneous findings of fact.

### A. Waiver

■ Before we address the applicable standard of review in this case, we must first determine whether appellate review is still available. Sprei argues that the Government has waived appellate review of its claims because it explicitly agreed to the district court's consideration of the Bobov Community letters in sentencing. *See United States v. Yu–Leung*, 51 F.3d 1116, 1122 (2d Cir. 1995) (finding that if a party consciously refrains from making an objection for tactical reasons, that claim is "extinguished" for the purposes of appellate review).[2] The Government did indeed invite the district court to "consider the exhibits for what they're worth." This hardly constitutes a waiver of all objections to departures based on the letters, however. As Judge Kaplan pointed out, rarely does a sentencing occur without submission of letters from family and community members of the type at issue here. *See also* 18 U.S.C. § 3661 (1994) ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."). That the Government conceded that such evidence was admissible does not mean that the Government waived objections to the propriety of decisions relying on that evidence. The record reveals that the Government did object at the proper time to both of the district court's proposed bases for departure, stating that a departure on either basis was not warranted. We therefore find that Sprei's waiver argument is without merit.

---

**2.** The Supreme Court has distinguished between the doctrines of waiver and forfeiture. *See United States v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993) ("Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." (internal quotation omitted)). Thus, "forfeiture does not preclude appellate consideration of a claim in the presence of plain error, whereas waiver necessarily 'extinguishes' the claim altogether." *Yu–Leung*, 51 F.3d at 1121 (quoting *Olano*, 507 U.S. at 733, 113 S.Ct. at 1777). Sprei asserts both doctrines on appeal.

## B. Standard of Review

■ We generally review a district court's decision to depart from the Sentencing Guidelines range for abuse of discretion. *See Koon v. United States*, 518 U.S. 81, 98–99, 116 S.Ct. 2035, 2046–47, 135 L.Ed.2d 392 (1996). Whether a factor relied upon by the trial court is a permissible basis for departure is included in our review because " 'the abuse of discretion standard includes review to determine that the [court's discretion in the sentencing determination] was not guided by erroneous legal conclusions.' " *United States v. Rioux*, 97 F.3d 648, 663 (2d Cir. 1996) (quoting *Koon*, 518 U.S. at 100, 116 S.Ct. at 2048). However, Sprei asserts that we should employ a more stringent plain error standard of review in this case because the Government has raised new objections to the Court that were not advanced to the district court at the time of sentencing. *See United States v. Keppler*, 2 F.3d 21, 23 (2d Cir.1993) ("Generally, issues not raised in the trial court, including sentencing issues, will be deemed waived on appeal in the absence of 'plain errors or defects affecting substantial rights.' " (quoting Fed.R.Crim.P. 52(b))). Specifically, Sprei points to the Government's claims that the departure was based on improper legal bases, and that the departure was based on unsupported factual findings about the effects of incarceration on Sprei's children.

■ Rule 51 of the Federal Rules of Criminal Procedure governs objections made to sentencing orders. The Rule provides that, to preserve an objection for appeal, "it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which that party desires the court to take or that party's objection to the action of the court and the grounds therefor." Fed.R.Crim.P. 51. In interpreting Rule 51, we have emphasized that "[a]n objection is adequate which fairly alerts the court and opposing counsel to the nature of the claim." *United States v. Rodriguez–Gonzalez*, 899 F.2d 177, 180 (2d Cir.1990). Our precedents demonstrate that to communicate the "nature" of a claim, a party does not have to present precise or detailed legal arguments. *See, e.g., United States v. Shumard*, 120 F.3d 339, 340 n. 1 (2d Cir.1997) (finding that the government's request that the district court "consider" a two-level adjustment for defrauding more than one victim was sufficient to preserve argument on appeal that the district court had erred in calculating the number of victims without regard for "relevant conduct" in addition to the actual offense of conviction); *Rodriguez–Gonzalez*, 899 F.2d at 180 (holding that defendant's objection to the "appropriateness" of a sentence enhancement was adequate, without use of more precise legal terminology, to preserve objection to the enhancement based on double jeopardy and due process grounds).

■ The Government's objection at the sentencing hearing was sufficient to apprise the court and opposing counsel of "the nature of its claims" regarding Sprei's family circumstances. At the sentencing hearing, counsel for the Government stated plainly that Sprei did "not satisfy the requirements for a family circumstances departure." The essence of the Government's objection to the trial court was that Sprei's family circumstances, as revealed by the letters, were not sufficiently extraordinary to merit a departure. Counsel distinguished Sprei's circumstances from those of defendants for whom departures based on family circumstances have been upheld, stating "[t]his is not a person who is the sole caretaker of a child with no support. This is a person who has the support of a large and extended family and a strong and committed community." The Government's argument to this Court that the asserted harms to Sprei's family are speculative and insubstantial is essentially the same argument given in more detail. Therefore, the Government has preserved the second prong of its argument for appellate review.

■ However, the Government failed to raise to the trial court the first prong of its argument, namely that a departure based on the Bobov Community's marriage practices implicates forbidden religious or socio-economic factors. The Government argues that this oversight should be excused due to the lack of notice it received that the district court planned to depart on the basis of the

marriage customs of the community as opposed to any of the other, more secular concerns raised in the thirty-seven letters. In the alternative, the Government argues that this issue falls within the waiver exception for novel and complex applications of the sentencing guidelines. *See, e.g., United States v. McCormick,* 58 F.3d 874, 877 (2d Cir.1995) (allowing appellate review of an especially complex sentencing issue even though it was not raised in the trial court). We do not need to reach either of these arguments, however, because we find that to the extent the district court did improperly rely on religious or socio-economic concerns, both factors forbidden from consideration under the Guidelines, that constitutes the sort of "plain error" that we can review regardless whether a party raised it below. *See Keppler,* 2 F.3d at 24 (describing plain error as one that is " 'so obvious that our failure to notice it would seriously affect the fairness, integrity, or public reputation of [the] judicial proceedings and result in a miscarriage of justice' " (quoting *United States v. Lopez,* 923 F.2d 47, 50 (5th Cir.1991))).

Because we agree with the Government that the district court relied in part on an impermissible basis in granting Sprei a downward departure, we do not reach the issue of whether the factual findings underlying the court's decision were clearly erroneous. Therefore, we do not need to address Sprei's argument that the Government has waived the third prong of its argument on appeal.

## C. Family Circumstances as a Basis for Departure

■ The goal of the Sentencing Guidelines is to ensure greater evenhandedness and unanimity in sentencing. While the Guidelines do not eliminate all of a district court's discretion to depart, based on the individual circumstances of a given case, they do provide several express restrictions. For instance, they provide that certain factors, such as race, sex, national origin, religion, creed, and socio-economic status, may never be used as a basis for departure. U.S. Sentencing Guidelines Manual § 5H1.10 policy statement (1997). Other factors are discour-

aged bases for departure because they "are not ordinarily relevant to the determination of whether a sentence should be outside the applicable guideline range." U.S. Sentencing Guidelines Manual ch. 5, pt. H, intro. commentary; *Koon,* 518 U.S. at 97, 116 S.Ct. at 2045. Discouraged factors may only be relied upon where "the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." *Koon,* 518 U.S. at 96, 116 S.Ct. at 2045.

■ Family ties and responsibilities are a discouraged basis for departure. *See* U.S. Sentencing Guidelines Manual § 5H1.6 policy statement. This is because "many defendants shoulder responsibilities to their families.... Disruption of the defendant's life, and the concomitant difficulties for those who depend on the defendant, are inherent in the punishment of incarceration." *United States v. Johnson,* 964 F.2d 124, 128 (2d Cir.1992). The presence of a hardship resulting from imprisonment is therefore ordinarily not enough to warrant a departure. It is only "[e]xtraordinary circumstances ... not capable of adequate consideration .... [that] may constitute proper grounds for departure." *Id.* In other words, only if a district court finds the hardship to be exceptional may it downwardly depart on that basis. *See United States v. Galante,* 111 F.3d 1029, 1034 (2d Cir.1997).

■ We defer to a district court's determination that the circumstances in a given case are atypical because district courts "have an institutional advantage over appellate courts in comparing one sentencing case to another," and are in the best position to "decide what combination of circumstances take a case out of the ordinary and make it exceptional." *Id.* However, the district court must exercise its discretion "in light of the Guideline's aim of reducing sentencing disparity ... and ... in line with precedents of the Supreme Court and of this Court." *Id.* at 1036. We therefore review a district court's decision to depart to ensure that "the circumstances relied upon to justify a downward departure are [not] so far removed from those found exceptional in existing case

law that the sentencing court may be said to be acting outside permissible limits." *Id.*

We have in the past upheld departures based on family circumstances where the family was uniquely dependant on the defendant's ability to maintain existing financial and emotional commitments. In *Johnson*, we upheld a departure for a single parent who faced "extraordinary" parental responsibilities, "more than the responsibilities of an ordinary parent, more even than those of an ordinary single parent" for she was "solely responsible for the upbringing of her three young children, including an infant, and of the young child of her institutionalized daughter." *Johnson*, 964 F.2d at 129. In *United States v. Alba*, 933 F.2d 1117 (2d Cir.1991), the defendant worked two jobs to support his wife, two children, his grandmother, and his disabled father who depended on the defendant's physical strength "to help him get in and out of his wheelchair." *Id.* at 1122. In *Galante*, a divided panel upheld a departure under circumstances similar to those in *Johnson* and *Alba*; the defendant played a primary role in the education, upbringing and support of two young children, since his wife spoke very little English and had a limited earning capacity. In addition, his father was critically ill in a chronic care facility and might require future physical and financial assistance. *Galante*, 111 F.3d at 1035.

We have reversed departures where the asserted harm to the family was insubstantial, and the departure primarily benefitted the defendant rather than his family members. For instance, in *United States v. Londono*, 76 F.3d 33 (2d Cir.1996), we rejected a downward departure so that the defendant and his wife could conceive a child during the wife's remaining child-bearing years. We found that disruption of family planning decisions was not a sufficiently unique hardship to warrant departure. *Id.* at 36–37 ("Many inmates could plausibly claim ... that a lengthy sentence will foreclose their chances of having children with their spouses."). In addition, noting that no family yet existed to benefit from the departure, we distinguished the desire to start a family from the kinds of obvious and compelling family obligations that had been upheld as bases for departure in the past. We cautioned that "sentencing courts should not undertake to weigh purely personal issues of family planning .... [because] courts lack the wisdom or special resources needed to evaluate the compelling character of people's family planning decisions." *Id.* at 37.

■ This case is more similar to *Londono* than to the *Johnson/Alba* line of cases. First, accepting as true the district court's finding that the marriage prospects of Sprei's children will suffer if Sprei is incarcerated for a long period, we still find that diminished marriage prospects do not present an extraordinary circumstance. Sprei's children can claim no more than most children of incarcerated parents—that the stigma of their parent's punishment has lessened their desirability as marriage partners. *Cf. United States v. Pozzy*, 902 F.2d 133, 139 (1st Cir.1990) (reversing departure for defendant who was pregnant and feared that birth in prison would stigmatize her child because neither the pregnancy nor the resulting stigma was sufficiently extraordinary); *cf. also United States v. Yu*, 954 F.2d 951, 955 (3d Cir.1992) (finding that Korean defendant was not entitled to a downward departure due to great loss of face he suffered as a result of publication of his name in Korean and English newspapers because the shame he felt did "not differ in character from that felt by many otherwise law-abiding persons upon being criminally convicted"). Because this stigma is an inevitable result of a parent's incarceration, it is unlikely that the Sentencing Commission did not consider this factor in designing the guidelines. We therefore cannot say that this circumstance renders Sprei's case atypical.

Moreover, in attempting to assess the prospects of Sprei's children in securing a match, the district court undertook "to weigh purely personal issues of family planning." The search for and ultimate choice of a desirable mate is the kind of intimate and imponderable decision that district courts lack the wisdom and resources to evaluate. Sprei's obligation to secure such a match for his children is hardly on the same plane as the kinds of "onerous" emotional and financial

obligations—such as the care of a parent or the nurture of a young child—that we have accommodated, or not accommodated, as the case arose, in the past. *See Londono,* 76 F.3d at 37.

Finally, to the extent the circumstances of Sprei's children are atypical because the established marriage practices of the Bobov Hasidic community place special emphasis on the role of the father, we agree with the Government that this is an improper basis for departure. Congress has directed that the Sentencing Guidelines must be "entirely neutral as to the race, sex, national origin, creed, and socioeconomic status of offenders." 28 U.S.C. § 994(d) (1994); *see also* U.S. Sentencing Guidelines Manual § 5H1.10 policy statement (stating that creed and religion are not relevant factors in the determination of a sentence). By according special deference to the customs of a particular religious community, the district court has chosen to treat adherents of one religious sect more favorably than non-adherents who might also desire to assist in planning their children's futures. *See, e.g., Board of Educ. of Kiryas Joel Village Sch. Dist. v. Grumet,* 512 U.S. 687, 706–07, 114 S.Ct. 2481, 2492–93, 129 L.Ed.2d 546 (1994) (striking down statute that created a special school district to accommodate a religious enclave as impermissibly singling out adherents of one religion for special benefits not accorded to other religions or to non-religious citizens).[3]

## III. CONCLUSION

For all of the above reasons, we find that the district court abused its discretion in granting Sprei a departure based on his children's marriage prospects. We therefore vacate and must remand the case unless we can conclude that the district court would have imposed the same sentence absent its reliance on this invalid factor. *See Koon,* 518 U.S. at 113, 116 S.Ct. at 2053–54; *Williams v. United States,* 503 U.S. 193, 203, 112 S.Ct. 1112, 1120–21, 117 L.Ed.2d 341 (1992).

Here, the district court evaluated several factors, including the vulnerability of Sprei's wife and father, and Sprei's history of good works in the community, in deciding to depart downward. However, as the court indicated that it would not have departed at all based on the circumstances of Sprei's wife and father alone, particularly emphasized the marriageability of the children, and, indeed, based the extent of its departure in reference to the ages and marriage prospects of Sprei's children, we do not perceive that the court would have imposed the same sentence in the absence of the marriage factor. We therefore vacate and remand the case to the district court for further proceedings consistent with this opinion.

---

**3.** The Government also claims that the district court was swayed by forbidden socio-economic considerations in departing so that Sprei's children might secure a "decent match." We decline, however, to attempt to assess whether the choice of a desirable marriage partner is inherently a socio-economic one. The difficulty of making such a determination illustrates why courts should not entangle themselves in "imponderable and intimate family decisions." *Londono,* 76 F.3d at 37.